UNITED STATES v. M. V. JENKINS ET AL.

No. 7924.—

Entry No. 683–K, etc.; 680–E, etc.

First Division, Appellate Term

(Decided December 26, 1950)

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellees.

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., concurring

COLE, Judge: We are required in this proceeding to review the decision of Cline, J., 24 Cust. Ct. 517, Reap. Dec. 7774, holding cost of production, section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)) to be the proper basis for appraisement of certain firebrick products. Nine items are in dispute. Following is a description of each with the value found by the trial judge. The prices set forth are in Canadian currency and based on a unit of 1,000 pieces.

| Description of item | 2/1/39 to 1/31/40 | 2/1/40 to 1/31/41 | 2/1/41 to 1/31/42 |
| --- | --- | --- | --- |
| Squares | $52. 70 | $52. 79 | $59. 16 |
| Side Arch #1 and #2 | 53. 70 | 53. 79 | 60. 16 |
| Splits, 1″ | 55. 45 | 55. 54 | 61. 91 |
| Splits, 1¼″, 1½″, and 2″ | 53. 70 | 53. 79 | 60. 16 |
| Soaps | 53. 70 | 53. 79 | 60. 16 |
| End Wedges #1 and #2 | 53. 70 | 53. 79 | 60. 16 |
| Tongue and Groove | 55. 20 | 55. 29 | 61. 66 |
| Necks, #3 | 59. 20 | 59. 29 | 65. 66 |
| End Skews | 59. 20 | 59. 29 | 65. 66 |
| Firebrick, 9″ x 6″ x 2½″, or Small X-Block | 75. 20 | 75. 29 | 81. 66 |

There has been considerable previous litigation in this case. The trial judge, *United States* v. *M. V. Jenkins et al.*, 13 Cust. Ct. 345, Reap. Dec. 6040, affirmed by the division on review, *M. V. Jenkins et al.* v. *United States*, 14 Cust. Ct. 393, Reap. Dec. 6131, held that Vancouver, British Columbia, was the principal market for the merchandise in question; that the manufacturer's prices to dealers were controlled; but that the dealers' prices met all requirements of foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), and

accordingly held the dealers' prices to be dutiable foreign value. An appeal to the United States Court of Customs and Patent Appeals resulted in a remand of the case because, as the appellate court stated, "Neither the trial court nor the appellate division of the Customs Court actually found the usual wholesale quantities in which each of the various articles here involved was freely offered for sale to all purchasers in the principal markets of Canada for home consumption" and therefore found it necessary "to reverse the judgment of the appellate division of the Customs Court and remand the case to it with instructions that it in turn remand the case to the trial court for findings in accordance with law." *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. 33, C. A. D. 341.

When the case in accordance therewith came before the trial judge, usual wholesale quantities were found for six of the items under consideration. They are as follows:

| Description of item | Usual wholesale quantity |
|---|---|
| Squares | 1,000 pieces |
| Soaps | 200 " |
| End wedges | 1,000 " |
| Splits | 200 " |
| Side arches | 200 " |
| Small X-blocks | 200 " |

As to the remaining three items, the trial court said, after detail review of reports of sales, "I find that these sales are insufficient to establish the usual wholesale quantities in which necks, end skews, and tongue-and-grooves were sold." Following a further analysis of the record, particular attention being given to the evidence offered by the witness, Horace E. Wager, customs agent, consisting of sales records and other memoranda, Government's collective exhibits 2, 3, 4 and 6, the trial court found that there was no uniform price at which any of the products in question were sold and therefore held that no foreign market value existed for the merchandise. *United States* v. *M. V. Jenkins et al.*, 21 Cust. Ct. 288, Reap. Dec. 7615. Restoring the case to the calendar, Cline, J., in Reap. Dec. 7615, *supra*, said:

After careful consideration of the entire record herein, I conclude that no foreign value for the various articles can be found on the evidence presented. Plaintiff has the burden not only of overcoming the presumption of correctness attaching to the appraiser's valuation but also of proving the correct dutiable value. *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276; *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332. It has been conceded by both parties that no export value exists and there is no evidence in the record as to United States value or cost of production. Since the plaintiff has failed to prove the correct dutiable value of the merchandise, I would be constrained to find the dutiable value of the merchandise on the basis of the appraised values. However, the appraised values were based upon the Clayburn factory price and it has been held by this court and affirmed by the Court of Customs and Patent Appeals that the Clayburn Co., Ltd., did not freely offer the merchandise to all purchasers in the

usual wholesale quantities and in the ordinary course of trade and that the Clayburn price was not acceptable as the basis of dutiable foreign value. Since the Court of Customs and Patent Appeals has directed this court to find the usual wholesale quantities and the prices at which the various articles were freely offered for sale to all purchasers in such quantities, and since I am unable to find such prices, I direct that the case be restored to the calendar so that proof may be offered to enable the court to make the required findings.

Pursuant thereto, the parties resubmitted the case under a written stipulation, showing that no export value or United States value existed for the merchandise and establishing a statutory cost of production for each of the items, leaving for determination whether foreign value, as alleged by appellant (the United States) or cost of production, claimed by appellees (the importers), should prevail.

The trial judge adhered to the reasoning employed, and the principle of a single or uniform price, invoked in the previous consideration of the case, Reap. Dec. 7615, *supra*, and accordingly held that no foreign value existed for the merchandise and that cost of production, in the amounts hereinabove set forth, was the proper dutiable value of the several products. *United States* v. *M. V. Jenkins et al.*, 24 Cust. Ct. 517, Reap. Dec. 7774, rehearing of *Same* v. *Same*, 23 Cust. Ct. 266, Reap. Dec. 7730.

That decision is the subject of this application for review. Appellant has assigned 11 errors. We dispose of all, without reference to each, individually. They are aptly summarized in the decision of the Court of Customs and Patent Appeals in C. A. D. 341, *supra*, stating: "* * * the controversy here is limited to the proper amount of the statutory value of the merchandise and whether any foreign value for it was shown to exist." It is conceded that if there is no foreign value, then cost of production, section 402 (f), *supra*, as agreed between the parties, becomes the dutiable value of the merchandise.

There is no necessity at this stage of the present litigation, for a lengthy review of the evidence. The trial court, in Reap. Dec. 7615, *supra*, set forth an accurate and detailed outline of the material phases of the record which serves our purpose.

It should be noted that although sales by dealers were made to three classes of purchasers, only those made to large industrials and large contractors are pertinent. Transactions with others were based either on accommodations to favored customers or at retail. Neither of such categories is to be considered in finding foreign value. The companies whose sales control the present issues are Evans, Coleman & Evans, Ltd., McCleery & Weston, Ltd., Champion & White, Ltd., and Gilley Bros., Ltd. Three procedures were followed by the said companies in delivering their firebrick products to the consumer, i. e., (1) by truck from the manufacturer's plant to the consumer in the principal market of Vancouver; (2) taken by purchaser at the warehouse of the dealer; (3) delivery by the dealer from stock at its ware-

house. As observed by the trial court, "it is logical that the prices in each case might be different."

Analysis of the list of pertinent sales (462) by the four companies, hereinabove mentioned, confirms the correctness of the conclusions of the lower court stated first in Reap. Dec. 7615, *supra*, and followed later in Reap. Dec. 7774, *supra*. Accordingly, we find, as did the trial judge, that the usual wholesale quantities for six of the items in question are as enumerated in the above tabulation; that as to the remaining three items (necks, end skews, and tongue-and-grooves), the reports of sales thereof are insufficient for determination of usual wholesale quantities; that the prices at which the three said items were actually sold varied from those set forth in the manual of prices; that each of the products in question was freely offered to all purchasers in the principal market of the country of exportation, at various prices; and that no definite or uniform price prevailed, within the requirements of section 402 (c), as amended, *supra*, for any of the articles. The condition negatives the existence of dutiable foreign value.

That the statute on appraisement contemplates a single price as determinative of dutiable value, was announced by the Supreme Court as early as January 3, 1898, in *United States* v. *Passavant*, 169 U. S. 16. The case arose under the Tariff Act of 1890. Section 19 thereof provided that "duty shall be assessed upon the actual market· value or wholesale price" of merchandise bought and sold in the foreign market under conditions specified in the law. Referring to the scope of said section 19, the Court, speaking through Chief Justice Fuller, said:

What was to be ascertained was the actual market value or wholesale price of the merchandise as bought and sold in usual wholesale quantities at the time of exportation, in the principal markets of the country from whence imported. This market value or price was the price in Germany and not the price after· leaving that country, and the act does not contemplate two prices or two market values.

The statutory construction thus established .was followed and emphasized in *Horace Day* v. *United States*, 3 Ct. Cust. Appls. 152, T. D. 32456.

In *United States* v. *Philipp Wirth et al.*, 20 C. C. P. A. 94, T. D. 45705, one of the considerations for holding the absence of statutory foreign value was that prices were not uniform, a reason also adopted in *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. 1, C. A. D. 115.

That appellant virtually concedes the soundness of the "single-price" principle, followed in each of the cited cases, appears in counsel's brief as they argue this way:

The principle that Congress did not contemplate more than one market value or price is sound, but it is not believed that Congress intended that merely because the usual wholesale quantity of merchandise is freely offered for sale at

differing prices, that the court is estopped from determining *the* price or *a* price or *one* price from amongst the several prices which would then represent the one market value or price for such or similar imported merchandise, as held in the *Minkus* case, *supra*. The order, R. D. 7615, and the decision in R. D. 7774, create such an estoppel, and it is *that* view which we respectfully urge this Court to examine and consider at this time. [Italics quoted.]

The *Minkus* case referred to, *United States* v. *M. Minkus*, 21 C. C. P. A. 382, T. D. 46912, is cited in the briefs of both counsel as supporting their respective positions. That case concerned dutiable value of dictionaries, shown to have been sold at a definite basic price of one German mark, less varying rates of discount, according to quantities purchased. The primary issue concerned interpretation of the statutory phrase, "usual wholesale quantities." The court held that the words "wholesale quantities" should be considered in the plural; otherwise, the scope of the statutory definition of foreign value would be unduly limited, and then, continuing with its analysis, said:

It is just as evident, however, as was held in the case of *G. W. Pleissner* v. *United States*, *supra*, that the Congress did intend, by the use of the word "usual," to limit the words "wholesale quantities" to such wholesale quantities as were usually, customarily, and ordinarily freely offered for sale to all purchasers in the principal markets of the country of exportation, in the ordinary course of trade; and that the language "in the usual wholesale quantities" was intended "to refer to a major portion of the sales or offers for sale," in wholesale quantities, of imported merchandise, subject, however, to the further limitation hereinbefore indicated that, although the word "quantities" must be applied in the plural, in the sense hereinbefore stated, the statute does not contemplate two or more "usual wholesale quantities" having two or more market values or prices. On the contrary, the statute does contemplate, we think, but one—*the usual*—having but one "market value" or "price * * * at which such or similar merchandise is freely offered for sale to all purchasers," at the time of exportation to the United States. [Italics quoted.]

Appellant contends that the reasoning applied in the *Minkus* case, *supra*, for determination of the usual wholesale quantity, should also be followed in finding the price of merchandise, where, as in the present case, it appears that the products are sold at varying prices. The point is presented in counsel's brief as follows:

In other words, if the usual wholesale quantity has been determined to be 100, and the record discloses five sales in such quantity at $1.00, one sale in such quantity, each at 95 cents, 90 cents, $1.02 and $1.05, it is submitted that the major portion of sales in the usual wholesale quantities would be $1.00, based upon the five sales in that quantity. That is the principle of law which we believe is applicable to the situation as found in the case at bar under the authority of the said *Minkus* case, *supra*.

The difficulty, if not impossibility, to apply Government counsel's novel theory lies in the peculiar statutory language, "usual wholesale quantities," considered in the *Minkus* case. The adjective "usual," is the key that opened the entire line of thought resulting in the formula adopted therein. That term, in its association with the

words, "wholesale quantities," supplied the basis from which the requirements of the statute were met.

Comparable analysis cannot be made in finding "the market value or the price," determinative of foreign value, section 402 (c), as amended, *supra*. Such clear and unqualified language does not suggest a break-down of varying prices like that applied to the wholesale quantities in ascertaining a usual wholesale quantity. Furthermore, none of the cases hereinabove cited offers the slightest indication for invoking the rule proposed by appellant as decisive of the present issue. On the contrary, they furnish ample authority for the proposition that foreign value means a single price, as held by the trial judge.

We find as matter of fact:

(1) That the merchandise in question consists of firebrick or refractory products described by the items enumerated below.

(2) That the usual wholesale quantities in which some of the items are sold are as follows:

| | |
|---|---|
| Squares | 1,000 pieces |
| Soaps | 200 " |
| End wedges | 1,000 " |
| Splits | 200 " |
| Side arches | 200 " |
| Small X-blocks | 200 " |

(3) That the proof is insufficient to establish usual wholesale quantities in which the remaining items (necks, end skews, and tongue-and-grooves) are sold.

(4) That there is no foreign value, export value, or United States value for the articles in question.

(5) That cost of production, section 402 (f) of the Tariff Act of 1930, is the proper basis of appraisement for all of the products.

Accordingly, we hold as matter of law that the statutory cost of production of the various items during the pertinent periods of time is as follows. (The amounts given are in Canadian currency per 1,000 pieces):

| Description of item | 2/1/39 to 1/31/40 | 2/1/40 to 1/31/41 | 2/1/41 to 1/31/42 |
|---|---|---|---|
| Squares | $52. 70 | $52. 79 | $59. 16 |
| Side Arch #1 and #2 | 53. 70 | 53. 79 | 60. 16 |
| Splits, 1″ | 55. 45 | 55. 54 | 61. 91 |
| Splits, 1¼″, 1½″, and 2″ | 53. 70 | 53. 79 | 60. 16 |
| Soaps | 53. 70 | 53. 79 | 60. 16 |
| End Wedges #1 and #2 | 53. 70 | 53. 79 | 60. 16 |
| Tongue and Groove | 55. 20 | 55. 29 | 61. 66 |
| Necks, #3 | 59. 20 | 59. 29 | 65. 66 |
| End Skews | 59. 20 | 59. 29 | 65. 66 |
| Firebrick, 9″ x 6″ x 2½″, or Small X-Block | 75. 20 | 75. 29 | 81. 66 |

The judgment of the lower court is affirmed.

Judgment will be rendered accordingly.

474

Mollison, Judge: For somewhat different reasons than are given by my colleagues in their opinion herein, I concur in the judgment rendered by them in this matter.

The valuation statute, insofar as it relates to foreign value, contemplates the adoption as the value of the merchandise under consideration the price at which *all* purchasers (i. e., all of those who cared to buy such goods in such markets (*United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308)) could purchase such or similar merchandise in accordance with the other elements of the statute. In other words, the statute contemplates a generality of offer—offer to an aggregation as distinguished from offer to a particular to the exclusion of all others.

I am satisfied, however, from a reading of the record and a study of the exhibits herein, that it has been established that the offers and sales of the products involved were on an individual basis in each case, that the price to A for any item depended upon particular considerations between A and the seller, and no pattern was established for the variation between that price and the price to B, another purchaser, who might possibly be in the same category of purchaser as to status, quantity purchased, distance of haul required, etc., as A. In this circumstance, there was no price in any given usual wholesale quantity at which *all* who cared to buy in that quantity could purchase—there were only a particular price to A, another particular price to B, etc. I believe that this negatives the existence of foreign value as contemplated by the statute.

It is, of course, apparent that the situation as to sales and offers for sale in this case was rather unusual, which is possibly explained by lack of competition, due to the fact, as stated in the record, that the products involved were made from a very fine quality of clay said not to be obtainable or used by other firebrick manufacturers in Canada, i. e., the sellers had a virtual monopoly of the sale of the products, which were evidently highly desirable and much sought after.

With respect to the findings made by the majority upon which the judgment herein has been rendered, I deem it not amiss to state the following:

I am not unmindful of the fact that in remanding the case to this court, our appellate court, in its opinion reported in 34 C. C. P. A. 33, C. A. D. 341, stated:

Owing to the fact that there has been no finding of the usual wholesale quantities and the prices at which the various articles here involved were freely offered for sale in usual quantities for consumption in Canada, we find it necessary to reverse the judgment of the appellate division of the Customs Court and remand the case to it with instructions that it in turn remand the case to the trial court for findings in accordance with law.

## 475

In following the mandates of the appellate court and this division, issued in accordance with the foregoing, the trial court found that usual wholesale quantities in which six of the nine items involved were sold for home consumption in the principal markets of Canada had been established, but found that for the three remaining items the evidence was insufficient to establish the usual wholesale quantities in which such items were sold. These findings are Nos. (2) and (3) stated at the end of the trial court's opinion reported in 24 Cust. Ct. 517, Reap. Dec. 7774.

The trial court then found that there was no uniform price at which any of the nine items involved were freely offered for sale for home consumption in the usual wholesale quantities in the ordinary course of trade (finding No. (4)), and, presumably based upon this latter finding, found in finding No. (5) that there was no foreign value for such or similar merchandise.

Findings Nos. (2) and (3) would be material if findings of such facts as would support a conclusion of the existence of foreign values for the merchandise were to be made, but since finding No. (4) negatives the existence of foreign values for the merchandise, it would seem that findings Nos. (2) and (3) are immaterial. They were obviously made by the trial court, however, for the reason that the remands by our appellate court and this division are stated to have been for the purpose of having such findings made.

The record shows that at the time of the remand by the Court of Customs and Patent Appeals there was no dispute as to the basis of appraisement (see p. 35 of appellate court's opinion, *supra*), i. e., that the correct basis of value was foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended. Later, and before the trial court, a stipulation of counsel was entered into and approved by the court which, among other things, recognized the possibility of a finding of nonexistence of foreign value and the existence of one of the other bases of value specified in section 402, *supra*. Upon concluding that foreign values for the merchandise in question did not exist, the trial court accepted the provisions of the stipulation in lieu of evidence and made the finding based upon cost of production here sought to be reviewed.

As the case comes before the division, it is my view that it is necessary to make only such findings of fact and conclusions of law as will support the judgment entered thereunder. I am therefore of the opinion that in view of the conclusion reached that no foreign value existed for any of the items involved, it is unnecessary to make the findings of fact listed as (2) and (3) in the findings of the majority, and I would find in their place—

That at the time of exportation of the involved merchandise there was no market value or price at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Canada.

I am in accord with the findings of my colleagues that no export or United States value, within the definitions of those terms in the statute, existed for the merchandise; that the proper basis of value is cost of production as defined in the statute; and that such cost of production is as determined by them.