(A. R. D. 92)

A. NEWBERG & CO., INC. *v.* UNITED STATES

Entry No. 828012.

First Division, Appellate Term

(Decided October 15, 1958)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Edward N. Glad* of counsel), for the appellant.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: This is an application for review of the decision of Donlon, J., sitting in reappraisement, with respect to the value of certain toffee candy imported from England.

Upon the trial of the issue, it appeared that the parties were in agreement that there was no foreign or export value for the merchandise within the meaning of those terms, as defined in section 402 (c) and (d), Tariff Act of 1930, as amended. Appellant here, plaintiff below, contends that a United States value, within the meaning of that term, as defined in section 402 (e) of the said act, as amended, existed, and was 17.87 cents per pound. Appellee here, defendant below, contends that no United States value existed and that cost of production, as defined in section 402 (f) of the act, was the proper basis of value for the merchandise, and that such value was the appraised value. Appellant conceded that if it should be found that no United States value existed, the value returned by the appraiser represented the cost of production of the merchandise.

The court below found that the plaintiff-importer had failed to show by competent proofs that a United States value for the merchandise existed, or, if it did exist, what such United States value was.

Much of the dispute between the parties centers about the effect of a certain agreement made between the plaintiff-importer and the manufacturer and exporter in England. It seems to be reasonably clear that at the time of exportation of the merchandise involved there existed an agreement between the English exporter and the importer providing that the latter was to confine its sales of the toffee candy in the United States to purchasers located in the eastern part of the United States. Appellant contends that even if such an agreement existed, it was not lived up to, and that, in fact, importer freely offered merchandise such as that in issue to all American purchasers who cared to buy, regardless of where located.

Appellee contends that the existence of the agreement created a controlled market in the United States by binding the importer from reselling in other than the specified territory and, consequently, prevented the existence of a statutory United States value.

Both appellant and appellee have cited a number of cases on the subject of the effect upon free offer of merchandise of agreements controlling the use, resale, or disposition of the offered goods. It seems unnecessary to discuss such cases in detail, for, as stated by our appellate court in one of them, *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262, at page 134:

* * * all lay down the principle that a foreign market is controlled when restrictions are imposed on the resale, free use, dominion over the merchandise, or confining of sales to selected purchasers.

All of such cases relate to the effect of restrictive offers *in the market where the goods are offered so restricted.* There is some evidence in this case that in offering its merchandise for sale *in England* for exportation to the United States the English manufacturer and exporter made some agreement with the importer herein restricting the territorial area in which the goods might be resold in the United States. Evidence of such an agreement, under the cited cases, would establish that the offer, *in England,* of such merchandise for sale for exportation to the United States was coupled with a restraint upon the resale, use, or disposition of the goods, and would prevent a finding of *export value* (sec. 402 (d)), i. e., that the merchandise was freely offered for sale in the foreign market for exportation to the United States.

We do not think, however, that such a restriction "runs with the merchandise," to borrow a phrase from real property law, and necessarily characterizes its *offer* in the *domestic or United States* market. Evidence of the fact that the agreement existed might constitute the foundation for further evidence tending to establish that there was a restrictive offering of the merchandise in the United States market, but it would not, standing alone, establish the fact of restricted offer in the United States market. There would have to be some evidence that the agreement was enforced, or was lived up to, in order to establish the fact of a restricted or controlled market in the United States.

Appellant contends that it established by testimonial and documentary evidence that it freely offered merchandise such as that here involved to all purchasers throughout the United States.

The testimonial evidence was given by Abraham Shenkman, who identified himself as the office manager and secretary of the appellant at the times here pertinent. His duties were to calculate costs, make up selling prices in consultation with the president of the firm, and "take care of all of the imports." There were six salesmen for the firm, which was a wholesaler of imported and domestic confectionary items, five working out of New York and one out of Los Angeles. The six, among them covered the United States, and Mr. Shenkman supervised them at least to the extent that he wrote up the stock books and notified the salesmen of the selling prices.

It appears that at the same time another individual, one Mal Newberg, was the general sales manager, but the extent of his authority, particularly over sales policies of the firm, the salesmen, and over Mr. Shenkman, is very poorly defined in the record.

It is Mr. Shenkman's testimony that, during the period from 1949 to 1951, which includes the time of exportation of the involved merchandise, the prices at which his firm offered and sold toffee candy such as that at bar to all purchasers throughout the United States

in the usual wholesale quantities of 1 chest, or 126 pounds, or more, did not fluctuate, and were 26 cents per pound to department stores and small retail stores, and 24 cents per pound to chain stores.

In support of these statements, there were offered and received in evidence as collective exhibit 1 copies of 164 invoices identified as having been taken at random from the files of the appellant and said to be representative of sales made during the period from November 1949 through June 1950 by the appellant firm of toffee candy such as that at bar. It appears that the sales represented by the invoices did not constitute all of the sales of such toffee made by the appellant firm during that period, but that they were offered to support and corroborate Mr. Shenkman's testimony that his firm, during the period in question, was offering and selling merchandise such as that at bar without geographical or territorial restriction, i. e., throughout the United States.

The invoices show sales made in what might be termed the north, east, south, and west of the United States. In considering their weight as evidence, however, the court below assigned no weight as evidence of the free offering of merchandise such as that at bar throughout the United States to (1) sales made in states east of the Mississippi River, (2) sales made to a single purchaser at a central office located in Chicago but for delivery to various localities in other states, and (3) sales made at times other than the time of exportation (which was considered to be May 1950).

The foregoing position excluded from consideration as evidence all but eight of the invoices, of which four were found to be clouded somewhat by reason of a notation which indicated association with the central office purchaser noted above, three were found to be in less than wholesale quantities, and only one was found to represent a sale west of the Mississippi, that is to say, represented a sale to a customer in St. Louis, Mo., on the west bank of the Mississippi River.

In the course of reaching the conclusion of ultimate fact as shown by finding of fact No. 3 in Reap. Dec. 9017 that the plaintiff had "not shown by competent proofs that there was United States value, at the time of exportation, for such or similar merchandise, nor what (if there were such values) the value is," the court below said:

The invoice copies (collective exhibit 1) are plaintiff's only evidence as to what the claimed United States value is.

Apparently this statement is the basis for assignment of error No. 5, filed in conjunction with the appellant's application for review. The said assignment reads as follows:

5. In not considering any of the oral testimony in determining the facts and making the conclusions of law in this case.

While there is no reference in the opinion of the court below to the testimonial evidence given by Mr. Shenkman with respect both to the nationwide character of the offer of toffee such as that here involved in the United States and the selling prices thereof in the domestic market, we are of the opinion that it would be absurd to hold that the court below did not consider the same. It is quite obvious that the court considered Mr. Shenkman's testimony to consist of conclusions as to the ultimate facts with respect to free offer and selling price, and that the only evidentiary facts offered in support thereof were the copies of the invoices in collective exhibit 1.

Viewed in that light, it becomes apparent that the court below found that the evidence offered in support of the testimonial conclusions was not sufficient for that purpose, and that consequently there was a failure of proof either of the existence of United States value or the amount thereof, if it did exist.

Other assignments of error call for the review of the finding of the court below that plaintiff had failed to establish the existence of United States value. We are of the opinion that, based upon factors other than those referred to by the court below, the record establishes that no United States value existed for merchandise such as that at bar.

Consequently, we find it unnecessary to set forth in detail our view on the evidentiary weight to be ascribed to the testimony of Mr. Shenkman and to the invoices represented by collective exhibit 1, except to say that we do not concur in the reasoning which led the court below to reject virtually all of the latter as evidence in support of the testimony of Mr. Shenkman.

It is, however, in our view unnecessary to decide whether or not the appellant did, in fact, freely offer merchandise such as that at bar for sale to all purchasers throughout the United States, for the reason that the record shows that, even if it did, such merchandise was offered *only* at prices which varied according to the category of the purchaser either as a department or retail store on the one hand, or as a chain store on the other. The price to the former was 26 cents per pound, and the price to the latter was 24 cents per pound. Such facts establish that at the time of exportation of the involved merchandise there was no uniform "price at which such * * * merchandise [was] freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to *all* purchasers," [italics added] as required by the United States value formula, section 402 (e), *supra*.

Appellant contends that the 26-cent-per-pound price, i. e., the higher of the two prices and that paid by the least-favored class of purchasers, should be adopted as representing the price at which the merchandise was offered for sale to "all" purchasers within the meaning of the

United States value formula. While the record indicates that the appellant was willing to sell to all classes of purchasers who wished to buy the involved toffee, it also shows that virtually all of those who cared to buy such merchandise fell into the categories of department stores, retail stores, and chain stores. These three categories constituted "all of those who cared to buy such goods in such markets" and so represented "all purchasers," within the meaning of that term as used in the valuation section (*United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308).

As reappraisement law on the subject has developed, it has been held that each of the bases of valuation contained in section 402, *supra*, contemplates a single price as determinative of value thereunder, and that where there is no single, uniform price at which merchandise is freely offered for sale to all purchasers under one of the said valuation bases, no finding of value upon such basis can be made. See, in this connection, the opinion of this court in the case of *United States* v. *M. V. Jenkins et al.*, 26 Cust. Ct. 467, Reap. Dec. 7924, particularly at pages 471–473, affirmed in *United States* v. *M. V. Jenkins et al.*, 39 C. C. P. A. (Customs) 158, C. A. D. 479.

A situation virtually on all fours with that in the case at bar was involved in the case of *Glanson Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182, wherein it appeared that merchandise such as that there involved was freely offered for sale in the foreign market at a series of prices depending solely upon the category of the purchaser, and it was there held that, under those circumstances, there was no price at which such merchandise was freely offered for sale to "all" purchasers and that, consequently, no foreign value therefor existed within the meaning of the statute. See particularly pages 511–512 of the aforementioned report of the opinion in the *Glanson* case.

Although on appeal the judgment in that case was reversed on other grounds (*Glanson Co.* v. *United States*, 31 Cust. Ct. 473, A. R. D. 33), there was apparent tacit approval of the principle upon which the decision was based.

The evidence with respect to United States value offered in this case had reference to merchandise "such" as that imported, and, as indicated above, established that no United States value for "such" merchandise existed. No evidence was offered with respect to a United States value for "similar" merchandise.

On the record presented, therefore, we find as facts:

(1) That the merchandise involved consisted of confectionery toffee candy exported from England on or about May 22, 1950.

(2) That, at the time of exportation thereof, such or similar merchandise was not freely offered for sale in England to all purchasers either for home consumption or for exportation to the United States.

(3) That at the said time such or similar merchandise was not freely offered for sale for domestic consumption in the principal market of the United States to all purchasers.

(4) That the merchandise was appraised on the basis of cost of production, as defined in section 402 (f), Tariff Act of 1930, the amount thereof being concededly correct in the absence of proof of a statutory United States value.

We conclude as matters of law:

(1) That cost of production, as defined in section 402 (f), Tariff Act of 1930, is the correct basis of value for the merchandise in issue, and

(2) That such value was the appraised value.

The judgment of the trial court is, therefore, affirmed, and judgment will issue accordingly.