(Reap. Dec. 9557)

W. R. ZANES & CO. ET AL. *v.* UNITED STATES

Entry No. 205–C, etc.

(Decided December 11, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff* and *Daniel I. Auster*, trial attorneys), for the defendant.

WILSON, Judge: These appeals for reappraisement, consolidated for trial, which are enumerated in schedule "A," hereto attached and

made a part hereof, relate to certain synthetic iron-oxide pigments exported from Germany from October 1952 through September 1955. The merchandise in question was manufactured by Farbenfabriken Bayer, hereinafter referred to as Bayer, and was exported by Harold Scholz & Co., for the account of Frank D. Davis Co., Los Angeles, Calif.

Entry of the merchandise was made at unit invoice prices, less non-dutiable charges, plus an addition to make market value. Appraisement of the merchandise was made on the basis of foreign value, represented by certain list prices of the manufacturer, as indicated in defendant's exhibit A, a Government report relative to sales of the involved merchandise, hereinafter referred to. Plaintiffs herein contend that there is no foreign value for the involved goods, maintaining that, during the period in question, there was no freely offered price for the merchandise for home consumption in Germany, but that the items under consideration were freely offered for sale to all purchasers for exportation to the United States at the invoice values. The parties herein stipulated, however, that if the court finds that there was a foreign value for the involved iron-oxide pigments, then "the foreign value for the various periods are those values for the various colors as represented by the attachment 4 on the Government agent's report" (defendant's exhibit A) (R. 3). In this connection, it is to be noted that in some of the entries, covered by reappraisement 259885–A, the involved pigments were appraised at higher foreign values than those stated in attachment 4 of defendant's exhibit A. As to those items in the pertinent entries, the Government concedes that, predicated on foreign value, the proper value for such items is DM 66.25 per 100 kilos, instead of DM 70.25, as appraised.

All the evidence in this case is documentary and consists of (a) an affidavit, dated January 14, 1959, executed by Bernhard van der Laan, associated in the sales department of the manufacturer since 1947 and in charge of the sales operation for iron-oxide pigments since 1953 (plaintiffs' exhibit 1) ; (b) an affidavit, dated January 14, 1959, executed by Dr. Rudolf Scholz, identified as a partner in the firm of Harold Scholz & Co. since 1929, and who, since that date, has handled the iron-oxide business and set the sales policy of the Scholz Co. (plaintiffs' exhibit 2) ; and (c) a report, dated May 6, 1955, from the United States customs examiner at New York to the director of the Customs Information Exchange, New York, attached to which are certain letters, pricelists, and other miscellaneous documents, some of which relate to shipments of the involved merchandise by the manufacturer (defendant's exhibit A). Such of the above material as is necessary to a determination of the issues presented in these appeals will hereinafter be referred to.

Included in the merchandise herein involved is an item of red-oxide pigment, which is identified by Bayer's code number 140F/SO or 140/SO. This particular pigment will be further considered later in this opinion.

Plaintiffs contend that there was no single uniform price at which each of the different pigments involved herein were offered for sale by Bayer for home consumption in Germany during the periods in question and that, therefore, there cannot be any foreign value for the merchandise. In this connection, plaintiffs direct our attention to the holding of the court in *A. Newberg & Co., Inc.* v. *United States*, 41 Cust. Ct. 612, A.R.D. 92. It was there held that evidence showing that an offer of merchandise for sale in the foreign market for exportation to the United States, coupled with a restriction as to resale, established that the foreign market for sale for exportation to the United States was controlled and, therefore, barred a finding of export value as to merchandise so offered. It was further held that where it appears that in the domestic market merchandise such as that in issue was offered for sale at two or more prices, depending solely upon the category of the purchaser, there was no price at which such merchandise was freely offered for sale to "all" purchasers, thus precluding a finding of United States value. In the *Newberg* case, *supra*, "the parties were in agreement that there was no foreign or export value for the merchandise." That is not the situation in the case at bar. I am of opinion, however, that plaintiffs in the case now before me have failed to establish that there was not a "foreign" value for the involved goods.

Specifically, with respect to the merchandise other than the item of red-oxide pigment identified by Bayer's code number 140F/SO or 140/SO, plaintiffs' contention that there was no foreign value for the goods, by reason of the fact that the manufacturer, Bayer, refused to sell less than 15 tons of iron oxide at one time for consumption in Germany, is without merit. In the case at bar, the requirement by the manufacturer of a purchase of not less than 15 tons of iron oxide is not a restriction as to use or disposition of the merchandise. This condition was part of the ordinary course of trade for the particular manufacturer herein. The situation in the *A. Newberg & Co., Inc.*, case, *supra*, is factually different from that in the instant case, and the holding of the court in the cited case is inapplicable in our present determination.

The further fact that it was the practice of the manufacturer herein to allow increasing discounts of from 5 per centum to 15 per centum, depending on the quantity sold from 100 tons to 1,500 tons within a 12-month period, thus making for varying discounts under such conditions, does not preclude a finding of foreign value for the

involved goods. The price for the merchandise to all purchasers was always the same per ton in quantities of 15 tons or more, the minimum purchase requirement. In the present case, there was a variance in price only when the aggregate tonnage reached one of the given discounts. However, inasmuch as (insofar as the record in this case discloses) such discounts were not allowed to all purchasers in the usual wholesale quantities and in the ordinary course of trade, the discounts in question may not be considered in arriving at the value of the merchandise. In my opinion, the pertinent list prices in the case at bar, without discounts, constitute the one and only uniform price for the goods, and such prices correctly represent the foreign value of the merchandise, nothing in the record appearing to overcome the presumption of correctness attaching to the appraiser's valuation. See, in this connection, *United States* v. *A. W. Faber, Inc.*, 21 C.C.P.A. (Customs) 290, T.D. 46817.

As to a claimed export value for the involved merchandise, the proof adduced on plaintiffs' part is insufficient to establish export value under the terms of the statute. Statements appearing in plaintiffs' exhibit 2 to the effect that various types of iron oxide were "freely offered" for export to the United States to "all" purchasers, detailing therein the respective prices at which such merchandise was offered and sold, do not constitute statutory proof. Statements of conclusions do not constitute substantial evidence to overcome the appraiser's valuation. *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 92, C.A.D. 705. However, as hereinabove stated, I find that there was a foreign value for the involved merchandise.

In the report from the customs examiner to the director of the Customs Information Exchange (defendant's exhibit A, page 4), the following statement is made:

* * * There are two items shipped by Scholz which do not fall into the above category; namely, Scholz #D–168 which is 50% Bayer 910 and 50% Bayer 920, and Bayer 140/SO which is manufactured solely for Scholz and shipped by him to various importers. This office intends to appraise D–168 at the price for Bayer #910 as representing similar merchandise. The reports show that Scholz, because of large purchases, received a special price from Bayer on all colors, and in filling out his consular invoices evidently used his F.O.B. Bremen price converted to Deutsche Marks as a home market selling price in column II of the invoices. If such a price were adopted for item 140/SO, it would be inconsistent with home market prices charged by Farbenfabriken Bayer. * * * The only item appearing on all Bayer's pricelists attached which would correspond in price to Bayer #140/SO is the item marked "Special." It is believed that the adoption of the prices shown for this item with surcharge of DM 2.25 per 100 kg for 25 kg packing would be within the scope of appraisement by all reasonable ways and means authorized by Section 500(a)(1) of the Tariff Act.

With respect to the item of red-oxide pigment, identified by Bayer's code number 140F/SO or 140/SO, the Government concedes that the

contention made by the plaintiffs that "such" or identical red-oxide pigment was not sold by the manufacturer for home consumption is supported by the evidence. The record discloses that this pigment was made exclusively for the firm of Harold Scholz & Co., which, in turn, only sold this pigment for exportation to the United States and all other countries, except Germany. Accordingly, there was no foreign value for "such" or identical red-oxide pigment. The defendant maintains, however, that this merchandise is the equivalent of or "similar" to the item marked "Special" on the pricelist for the period involved, that, therefore, there was a "foreign" value for this particular red-oxide pigment, and that the appraised values for the merchandise in question should be adhered to.

The value found by the appraiser shall be presumed to be the correct value of the merchandise, and the burden rests upon the party challenging its correctness to prove otherwise. *United States* v. *Baar & Beards, Inc., supra.* In the case at bar, appraisement of the items of red-oxide pigment, identified by Bayer's code number 140F/SO or 140/SO, was made on the basis of foreign value, i.e., "the market value or the price at the time of exportation of such merchandise to the United States, at which such or *similar* merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported," etc. [Italics supplied.] There is nothing in this record to establish that the items of red-oxide pigment, identified by Bayer's code number 140F/SO, were not "similar" to the merchandise marked "Special," which appears on all Bayer's pricelists attached to defendant's exhibit A. "Similarity" and its concomitant element "dissimilarity," respecting imported merchandise, are issues of fact to be established by proofs, not by inference, argument, or interpretation. *Nicholas Gal (Globe Shipping Co., Inc.)* v. *United States*, 38 Cust. Ct. 728, A.R.D. 72 (suit 4926, dismissed on motion). Plaintiffs have not established by competent evidence that the red-oxide pigments under consideration were not similar to the item marked "Special" on the pricelists upon which appraisement of the 140/SO items was predicated.

On the record presented, I find as facts:

1. That the merchandise involved consists of various colors of synthetic iron-oxide pigments manufactured by Farbenfabriken Bayer and exported by Harold Scholz & Co., Cologne, Germany, between October 1952 and September 1955.

2. That, except for certain items of several colors covered by reappraisement 259885–A, the merchandise was appraised on the basis of foreign value, in accordance with the prices set forth in attachment No. 4 of defendant's exhibit A.

3. That, on the basis of foreign value, the merchandise in the following entries covered by reappraisement 259885–A was stipulated to be valued at DM 66.25 per 100 kilos, viz:

| Entry | Item No. |
|-------|----------|
| 12196 | B 771 |
| 12511 | B 776 |
| 14681 | B 773 |
| 14731 | B 771 |
| 17943 | B 771 |
|       | B 773 |
| 17944 | B 1662. |
|       | B 772 |
|       | B 773 |
| 18023 | B 771 |
| 18024 | B 771 |
|       | B 773 |
| 18229 | B 1662 |
| 18644 | B 776 |
| 18646 | B 771 |
| 18647 | B 772 |
| 21809 | B 772 |

4. That such or similar merchandise was freely offered for sale for home consumption in Germany during the involved periods of exportation.

5. That it was stipulated between counsel for the respective parties that if the court finds there is a foreign value for the involved merchandise, then, in that case, such value is the price shown in attachment No. 4 of defendant's exhibit A for each item, with the exception of the items covered by the entries in reappraisement 259885–A referred to in finding of fact No. 3.

I conclude as matters of law:

1. That such or similar merchandise was sold for home consumption in the country of exportation in accordance with the statutory elements set forth in section 402(c) of the Tariff Act of 1930, as amended.

2. That such foreign value is the value for each of the involved items as appraised, with the exception of the items enumerated in finding of fact No. 3, *supra*, and, as to the latter merchandise, the foreign value is the agreed upon value as stated, namely, DM 66.25 per 100 kilos, net, packed.

Judgment will be entered accordingly.