(Reap. Dec. 9969)

HISMOCO (AMERICAN CO.) ET AL. *v.* UNITED STATES

Entry No. 11428, etc.

(Decided April 5, 1961)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

JOHNSON, Judge: The merchandise involved in these appeals for reappraisement, consolidated at the trial, consists of dried mushrooms,

exported from Chile during the latter part of 1954 and the early part of 1955. It was invoiced and entered at $1 per kilo and was appraised at either $1.05 per pound, less 10 per centum, packed, or at $0.75 per pound, less 10 per centum, packed, all in United States currency. The importer claims that the proper basis of appraisement is the export value and that such value for such merchandise is $1.015 per kilo, United States currency.

At the trial, Herbert Hischemoeller, owner of the plaintiff company, testified that he had been an importer of spices since 1942 but that the present transaction was his first business in mushrooms. The importation came about as a result of an agreement with a Mr. Carrasco, whereby he (Hischemoeller) advanced $5,000 against which Carrasco was to ship mushrooms from Chile at a price of $1 per kilo. In addition, Carrasco was to participate in the net profits up to 25 per centum on the sale of such mushrooms by Hischemoeller in this country. At the close of the season, the amount due to Carrasco was found to be 1½ cents per kilo. The arrangement was not an exclusive one, except that Carrasco had to supply Hischemoeller with $5,000 worth of mushrooms first. Susequently, Hischemoeller took a few more lots at the same price and with the same participation in the profits by Carrasco.

Julio Carrasco testified that he was a native of Chile and had lived there a total of 28 years, but had been away from there for various periods while in the import-export business in Argentina, Peru, and the United States. During that time, he had become conversant with the products and articles Chile could export. For about 2½ years prior to January 1954, he had been employed by A. W. Horton & Co. in Los Angeles and had been in charge of its Latin-American Division. In that capacity, he had purchased mushrooms from Chile, had observed that such mushrooms were packed in bulky cardboard boxes with one piece of paper on top, and had noted that many shipments were rejected by the Food and Drug Administration because the mushrooms were extremely moldy, were of a greenish or grayish color, and could not be cleaned of the mold.

After leaving A. W. Horton & Co., Mr. Carrasco went into business on his own, but, because the importation of mushrooms was risky, he had difficulty in interesting firms in importing them. He had made an offer to several people such as that made Mr. Hischemoeller, before the latter had agreed to his proposition.

Mr. Carrasco explained that, in Chile, mushrooms are usually picked and sun-dried by peons; they are then gathered by a collector for a particular region, are sold to an area collector, and resold to a wholesaler, who puts them in bags and sells them to the exporter. On the other hand, Carrasco purchased sun-dried mushrooms directly from the peons and then dehydrated or bone dried them. He packed 15 kilos in a bag, put clips around the end, and then put another bag

over the other side. Four bags were put together to make a bale. By this method, he was able to put a larger quantity into the same space and thus save on freight charges.

The witness testified that sun-dried mushrooms are hydroscopic and absorb moisture which causes them to become moldy. Dehydrated mushrooms, on the other hand, do not pick up moisture but they have a different taste. He stated:

The mushroom is almost all water, and when it is sun-dried the mushroom acquires a special flavor and a special odor, which is very penetrant and which is completely different to the dehydrated ones. The dehydrated, the moment it is bone-dried, you have 100 per cent assurance that it will not pick up any moisture of hydroscopic quality, but it is not as good flavor as the sun-dried, which contains the natural taste.

Both the sun-dried and the dehydrated mushrooms have to be put in water before they are eaten.

Mr. Carrasco stated that he had never heard of any bone-dried mushrooms being sold for home consumption in Chile during the period in question; that he never heard of any other exporters in Chile who bone dried and packed mushrooms as he did; and that he never saw any packer or exporter bone dry and pack mushrooms as he did.

The witness said that after he had shipped 5,000 kilos of mushrooms to the plaintiffs he had offered mushrooms to another firm but did not receive an answer. He testified:

Q. Was it offered at the same price at which you offered to Mr. Hischemoeller, i.e., $1 a kilo, plus 25 per cent participation?—A. No, sir, it was not on that basis.

Q. Did you ever offer this to anybody else?—A. I offered them on the basis of c.i.f. and f.o.b. That was not the same price.

The parties are in agreement that this merchandise was appraised on the basis of the export value of mushrooms which the appraiser found to be similar. Plaintiffs contend, however, that the mushrooms involved herein are not similar to those sold for export to the United States by other exporters and that the price at which Mr. Carrasco sold such mushrooms to the plaintiffs is the price to be used in determining the export value thereof.

It is well settled that the burden upon a party attacking an appraised value is twofold: To prove the action of the appraiser erroneous, and to establish affirmatively some other value as the proper one. *Kenneth Kittleson* v. *United States*, 40 C.C.P.A. (Customs) 85, C.A.D. 502; *H. S. Dorf & Co., Inc.* v. *United States*, 41 C.C.P.A. (Customs) 183, C.A.D. 548; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593. Even where an appraisement based on the value of similar merchandise is erroneous because there is no similar merchandise, it is incumbent upon the appealing party to establish the proper dutiable value by proof of every element

thereof in strict compliance with the statute. *United States* v. *Vandegrift Forwarding Co., Inc.*, 42 Cust. Ct. 687, A.R.D. 96.

In the instant case, export value of such merchandise is claimed to be the proper basis of appraisement. Said value is defined in section 402(d) of the Tariff Act of 1930 as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Assuming, without deciding, that there was no foreign value for merchandise such as that involved herein, in order to establish an export value therefor, it is necessary to find *the* price at which such merchandise was *freely offered* to *all* purchasers in the principal markets of Chile in the *usual wholesale quantities* and in the ordinary course of trade, for exportation to the United States. *United States* v. *M. Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912; *United States* v. *Mexican Products Co.*, 28 C.C.P.A. (Customs) 80, C.A.D. 129; *United States* v. *M. V. Jenkins et al.*, 26 Cust. Ct. 467, 471–473, Reap. Dec. 7924, affirmed in 39 C.C.P.A. (Customs) 158, C.A.D. 479; *A. Newberg & Co., Inc.* v. *United States*, 41 Cust. Ct. 612, 617, A.R.D. 92.

The only evidence as to the price and method of sale of the within merchandise is that it was offered and sold to the plaintiffs at $1 per kilo, plus a participation in the profits, and that it was offered to others on a different basis at a different price, not specified. There is no evidence at all as to principal markets or usual wholesale quantities. This record is clearly insufficient to establish an export value for such merchandise in accordance with the statute. Therefore, it is unnecessary to determine whether or not the mushrooms which the appraiser found to be similar are, in fact, similar to those involved herein.

Since the plaintiffs have failed to present evidence to establish their claimed value, the appraised value must be sustained.

I find as facts:

1. That the merchandise involved herein consists of dehydrated or bone-dried mushrooms, exported from Chile during the latter part of 1954 and the early part of 1955.

2. That the merchandise was invoiced and entered at $1 per kilo and was appraised at either $1.05 per pound, less 10 per centum, packed, or at $0.75 per pound, less 10 per centum, packed, all in United States currency. That the appraisement was made on the basis of the export value of mushrooms which the appraiser found to be similar.

3. That such merchandise, dehydrated or bone-dried mushrooms, was offered and sold to the plaintiffs at $1 per kilo, plus a participation in the profits, and that it was offered to others on a different basis at a different price.

I conclude as matters of law:

1. That plaintiffs have failed to establish any value for such merchandise other than the appraised value.

2. That export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for the determination of the value of said merchandise.

3. That said value is the appraised value in each instance.

Judgment will be rendered accordingly.