## MARINE PRODUCTS CO. *v.* UNITED STATES

**No. 7373.**—Pro forma invoices dated May 7, 1942, etc.
Entered at San Diego, Calif., May 7, 1942, etc.
Entry Nos. 68; 3.

(Decided September 8, 1947)

*Harper & Harper* (*Lawrence A. Harper* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

OLIVER, Presiding Judge: These appeals involve the value of canned tuna fish shipped from Mexico on April 26 and July 8, 1942, packed in cases containing 48 cans, and invoiced, entered, and appraised, apparently on the basis of foreign value, as follows:

| | Invoiced and entered U. S. $ per case | Appraised Mex. pesos per case |
|---|---|---|
| Yellowfin | 3. 817 | 48. 50 |
| Striped | 3. 645 | 48. 50 |
| Yellowfin or striped flakes | 3. 511 | 41. 50 |
| | Plus American cases and cans | Net, packed, U. S. cans and cases included. |

The plaintiff contends (a) that there is no foreign value, since such or similar merchandise was not packed and sold for consumption in Mexico; (b) that there is no export value, since the merchandise was not freely offered for sale to all purchasers for export to the United States as the importer had an exclusive purchasing agreement with the exporter; (c) that there is no United States value, since the merchandise was not freely offered for sale to all purchasers for domestic consumption at the time of exportation as the plaintiff had an exclusive selling agreement with the Westgate Seafood Products Co. of San Diego; (d) that appraisement should therefore be made on the basis

of the cost of production; and (e) that the cost of production is represented by the entered values.

The record consists of the testimony of two witnesses for the plaintiff and certain documentary evidence and samples (exhibits 1, 2, A, and B).

Lucian K. Small, president of the plaintiff, testified that his company had made a contract (exhibit 1) with the Cía. de Productos Marinos, exporter herein, to purchase the entire output of its packing plant located at Cape San Lucas, Lower California, Mexico, for the year or season of 1942, and that in that year this was the only plant in Mexico packing tuna fish.

R. J. Cabral, general manager, of the exporter, in an affidavit (exhibit 2) states that he is familiar with the manufacture or processing of tuna fish in Mexico; that two separate packs were put up during 1942, one for the Mexican market and one for the American market; that the two packs were graded differently, met different standards, were sold separately, and were not commercially interchangeable; that in packing for the American market, great care was taken to comply with the United States Food and Drug Administration standards and that only fish in the freshest condition was used; that for the Mexican pack, they were less fastidious; that certain cases of tuna which had been rejected by the United States Food and Drug authorities had been returned and sold in the Mexican market; and that the Mexican cans were required to be labeled while the American pack was put up without labels.

The contract between the plaintiff company and the exporter (exhibit 1) provides for the Mexican company to sell and the plaintiff to buy all of the tuna packed by the Mexican company during the season commencing February 1, 1942, and ending June 30, 1942, at the following net prices, f. o. b. dock, San Diego, freight, insurance, and importation duties paid:

*Dollars*

| | |
|---|---|
| Fancy solid pack yellowfin or skipjack tuna, per case of 48 7-oz. tins | 6. 70 |
| Standard yellowfin or skipjack tuna, per case of 48 7-oz. tins | 6. 45 |
| Flakes, per case of 48 6-oz. tins | 6. 25 |

The exportation involved in reappraisement 151858–A was made on April 26, 1942, during the term of the above-mentioned contract (exhibit 1).

A customs agent's report in evidence (exhibit B) lists sales of tuna fish in Mexico beginning on June 15, 1942, and contains the statement: "No record was found of sales previous to this date in 1942."

As to this reappraisement (151858–A), I find that there were no sales or offers for sale of canned tuna fish in Mexico for home consumption on or about the date of exportation of this shipment and that

therefore no foreign value existed. I also find that, by contract (exhibit 1), the exporter confined the sales of its entire output of tuna fish packed during the season from February 1 to June 30, 1942, to the plaintiff herein, and accordingly no sales or offers for sale for exportation to the United States were made by them to others; and, inasmuch as this exporter operated the only plant packing canned tuna fish in Mexico, I conclude that no export value existed at the time of the exportation of the merchandise covered by reappraisement 151858–A. A parallel situation exists with reference to plaintiff's sales in the United States, since such sales were confined by an exclusive selling agreement to one purchaser. Therefore, the sales made in the United States by Marine Products Co. (plaintiff) form no basis for a determination of United States value.

A party undertaking to disprove the application of United States value as a basis of valuation assumes the burden of establishing that neither *such* (identical) nor *similar imported* merchandise is freely offered for sale within the definition of United States value. Here, plaintiff, in an apparent attempt to meet this burden, has shown that it is the sole importer into the United States of canned tuna fish from Mexico, which tuna fish is then resold in the United States market to one purchaser to the exclusion of all others. Having proved that the sales in the United States of this Mexican tuna fish were confined to one purchaser, and that *identical* merchandise was not freely offered to all purchasers, establish only that no United States value was created by the sales or offers for sale of *such* merchandise. This record is silent as to whether or not any *similar imported* tuna fish is offered for sale in the United States within the definition of United States value.

I therefore hold that the plaintiff has failed to sustain its burden of proving a statutory value for the merchandise involved in reappraisement 151858–A and accordingly I find the values of that merchandise to be the values found by the appraiser.

The second shipment of canned tuna fish, covered by reappraisement 151859–A, was exported on July 8, 1942, subsequent to the period embraced by the contract (exhibit 1). The customs agent's report (exhibit B) reports sales of tuna fish made in Mexico on or about that date at the prices returned by the appraiser. It also states (pp. 2/3 and 7):

Besides the above contract with the Marine Products Company, which called for the entire production of the Compañía de Productos Marinos' cannery, this company also has a signed agreement with E. Pando y Cía, Mexico, D. F., Mexico, to deliver 15,000 cases of "Calmex" solid pack canned tuna fish at 20.95 pesos per case, and 1,800 cases of "Promar" canned tuna fish flakes at 16.00 pesos per case, delivered F. O. B. Cape San Lucas, Lower California, Mexico.

Mr. Cabrál stated that this agreement with E. Pando y Cía, granted them the exclusive sales agency for his company's products in Mexico. * * * Also according to Mr. Cabrál, the prices made to E. Pando y Cía were "special" prices, and were made because E. Pando y Cía finances the operations of the Compañía de Productos Marinos.

\* ⋅ \* \* \* \* \* ⋅ \*

In spite of the fact that the Compañía de Productos Marinos has a contract with the Marine Products Company, San Diego, California, which calls for the entire production of its cannery, and also an agreement with E. Pando y Cía, Mexico, D. F., in which the Compañía de Productos Marinos agrees to furnish this company 16,800 cases of canned tuna, regular wholesale sales are made by Compañía de Productos Marinos in Mexico.

In the list of sales in Mexico (exhibit B), only one sale on August 12, 1942, seems to be pursuant to the above-mentioned contract with E. Pando. All of the other sales were made at prices more closely related to the values reported by the appraiser.

It would seem that, even if it were agreed that the so-called Mexican pack and the American pack were not similar for customs purposes, this record does not establish that all of the merchandise involved in the sales reported by the customs agent in exhibit B was of the Mexican pack. It would seem from this record that all, excepting possibly the one sale made to Pando on August 12, 1942, at his contract price, was either of American-pack tuna fish or merchandise similar thereto for customs purposes.

This record does not establish that *all* the canned tuna fish sold for Mexican consumption was of inferior quality, but does make clear that the minimum of acceptability as to quality was lower for the Mexican market than for the American market (R. 35/6). In fact, it is conceded that the tuna fish contained in some of the cans sold in the Mexican market might be identical with that exported to the United States (plaintiff's rebuttal brief, p. 9).

On this record, I do not consider the fact that the Mexican merchandise is required to be labeled, while the American merchandise is sold without labels, to be material.

The question of usual wholesale quantity is not in issue as there is evidence that the price does not in any way depend upon the quantity purchased (exhibit B, p. 8).

I therefore find that there did exist a foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Administrative Act of 1938, for the tuna fish involved in reappraisement 151859-A, and that such values are represented by the values found by the appraiser.

Judgment will be rendered accordingly.