MARINE PRODUCTS CO. *v.* UNITED STATES (No. 4665) [1]

---

[1] C. A. D. 462.

United States Court of Customs and Patent Appeals, June 29, 1951

*Lawrence, Tuttle & Harper* (*Lawrence A. Harper* of counsel) for appellant.
*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the First Division, Appellate Term, of the United States Customs Court, rendered pursuant to its decision, Reap. Dec. 7830, 24 Cust. Ct. 615, modifying the judgment of the trial court, rendered in conformity with its decision, Reap. Dec. 7647, 22 Cust. Ct. 371, involving Reappraisements 151858–A/13 and 151859–A/14. The courts below determined cost of production under section 402 (f) of the Tariff Act of 1930 (19 U. S. C. A. sec. 1402 (f)), as applied to canned tuna fish imported from Mexico into the United States.

The merchandise involved consists of two shipments from Mexico on April 26 and July 8, 1942, entered on the basis of cost of production and appraised on the basis of foreign value, section 402 (c) of the Tariff Act of 1930, *supra*. That appraisal was affirmed by the trial court, Reap. Dec. 7373, 19 Cust. Ct. 243, whereupon the importer moved for a rehearing which was granted. The trial court then held that the proper basis for duty of the merchandise was section 402 (f) of the Tariff Act of 1930, *supra*, namely, cost of production.

Upon appeal by the Government from that decision the Customs Court, sitting in appellate term, likewise found the merchandise dutiable under the cost of production clause of section 402 (f), *supra*, but modified the judgment of the trial court in arriving at the profit ordinarily added. One judge dissented.

Cost of production is defined by section 402 of the Tariff Act of 1930 as follows:

SEC. 402. VALUE.

\*        \*        \*        \*        \*        \*        \*

(f) *Cost of Production.*—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

    (1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

    (2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

    (3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

    (4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

\*        \*        \*        \*        \*        \*        \*

The trial court made the following findings of fact:

(1) That the merchandise herein consists of canned tuna fish exported from Mexico on April 26 and July 8, 1942.

(2) That the imported merchandise is not similar to the canned tuna fish packed for the Mexican market; consequently no foreign value exists.

(3) That the exporter sold its entire output to the plaintiff and no sales or offers to sell for exportation to the United States were made by it; consequently no export value exists.

(4) That there was no prototype merchandise in the United States available for offer at or near the date of exportation; consequently no United States value exists.

(5) That the cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise herein.

(6) That the cost of production of the merchandise herein is 26.2760 Mexican pesos per case.

No error has been assigned as to the value of the items entering into the cost of production in accordance with the provisions of section 402 (f), paragraphs (1), (2), and (3), as found by the court below. The issue is confined to the question of what is the profit ordinarily added.

The majority of the court below held that on merchandise of the same general character as is here involved, the profit ordinarily added

was 109% on the solid pack and 79% on the flake pack. The fixing of that percentage of profit was based on the price of 442 cases of Mexican pack, solid and flakes, sold in Mexicali, Tia Juana, and Ensenada.

The clear statement of facts set out in the decision of the single trial judge was approved and quoted in the prevailing opinion of the appellate division, to which reference is here made without repeating it.

Briefly, it appears that between February, 1942, and August, 1942, there were packed 8,567 cases of canned tuna by the exporter, the only company engaged in that type of work in Mexico. During November and December of that year, 4,933 additional cases were packed, making a total during the calendar year of 13,500 cases. This total includes tuna packed for both the American trade and the Mexican trade, at least 4,926 cases being packed for the American trade. It appears that the tuna canned for the Mexican trade may be of a quality that is not accepted under the Pure Food and Drug laws of the United States. Therefore, the fish imported by appellant was of superior quality. It further appears that appellant had contracted with the cannery for all of its export production. In addition, however, the cannery had a contract with E. Pando & Co. of Mexico City to deliver to it 15,000 cases of canned tuna known as Calmex brand and 1,800 cases of what is known as Promar brand of tuna. It is shown by the record that sales of the Calmex brand, which is solid pack fish, and the Promar brand, which is tuna fish flakes, were made in Ensenada, Tia Juana, Mexicali, and Mexico City, to the amount of 2,468 packs. Those sales were made between June 15, 1942 and October 15, 1942, and apparently from the 8,567 cases packed between February and August, 1942. Of the total of 8,567 cases, 4,926 were exported to the United States, which left a balance of 3,641 cases, and it is stated in the brief by counsel for the Government that it is properly inferable that 2,468 cases of the 3,641 cases were sold.

It appears that 2,000 cases were sold to Pando & Co. at 20.95 pesos, 399 cases of solid pack at 48.50 pesos, 15 cases of like pack at 50 pesos, 11 cases of solid pack at 45 pesos, and 43 cases of flakes at 41.50 pesos. In all it will be observed that 2,468 were sold in Mexico during that period, and of that amount, 468 cases were sold in Mexicali, Tia Juana, and Ensenada.

It is shown by the record that while the exporter, as has been hereinbefore noted, had contracts with appellant and the Pando company, that it also made regular sales of wholesale lots in Mexico. It was upon the prices at which the goods were sold in such regular business that the majority of the appellate division determined the additions for profit.

It is contended by counsel for appellant that it was error on the

part of the court below, in making its determination of the ordinary amount of profit as provided for in the statute, not to have taken into consideration the price of the sales to Pando & Co., to wit, 2000 cases at 20.95 pesos each.

It appears that the Pando company financed the operations of the producer of the canned fish and that in consideration of such financing, the price at which the canned fish was sold to Pando was much below the actual cost to the cannery. For the reason that the production cost of the canned tuna fish as found by the courts below, which is not disputed, is 24.7084 pesos per case, it is clear that the sale of such commodity at 20.95 pesos per case results in a substantial loss to the cannery. It is also clear that if the sales to Pando & Co. be taken as determinative of the proper addition for profit under the statute, such profit would be limited to 8%.

With respect to the majority of the lower court declining to consider the sales to Pando, it is stated as follows:

* * * ˙ To recognize such transactions and accept them as controlling of the present issue, would be to sanction a practice that would permit organization of "dummies"—call them "finance companies"—to whom "sales" might be recorded at unusually low prices from which a fictitious profit could be rigged. The illustration is not an inference of what happened in this case. It is given to emphasize that we cannot apply to said section 402 (f) (4) a congressional intent to allow as considerations in finding profit in the determination of statutory cost of production, a peculiar set of transactions to one financially interested in the business operations of the exporter.

It is contended by counsel for appellant that the court below erred in assuming that the Mexican pack is of the same general character as the American pack, and therefore may not be properly used as a basis upon which to calculate profit. It is clear to us that the distinction to be made between the Mexican and the American pack is entirely of quality. Firmer fish was used in the American pack while softer fish was used in the Mexican pack. The fish in the American pack is lighter in color than that in the Mexican pack, which difference appears to depend upon the length of time the fish have been on ice. Apparently the longer the fish remains on ice the more likely it is to become dark and "honeycombed." Furthermore, the Mexican pack contains Bonito and Black Skipjack. Neither of those types of fish are included in packing for the American trade but are considered as types of tuna to the trade in Mexico.

It does not appear that the cost of packing the fish for American trade is any different than the cost of canning tuna for the Mexican trade.

In support of the contention that the cost of producing both Mexican and American packs was the same, counsel for the Government quoted from the case of *United States* v. *Heemsoth-Kerner Corp.*,

31 C. C. P. A. (Customs) 75, C. A. D. 252, quoting from the decision of the appellate division of the Customs Court in the same case, as follows:

Although the trial court was of the opinion that defendant's exhibit 7, the report of an assistant Treasury attaché in Germany, was of little probative value, we find that said report discloses that the type sold in the home market was not identically the same as that shipped to the United States, being of heavier body and of different size, but that all of the type manufactured is from the same raw material whether it is intended for use in Germany or for export and that the cost of production of the exported type is substantially the same as that made for the home market, as the difference in the size and weight of the type bodies is too small to be of any significance in a comparison of the production cost of the finished type. The evidence produced by the Government, therefore, corroborates evidence of importer that the printing type manufactured for home consumption is of the same general character as printing type manufactured for export to other countries including the United States.

It appears to us that the tuna fish of the Mexican pack possesses the same general character as that of the American pack and therefore we agree that the appellate division properly calculated profit on the basis of cost of material and labor in the Mexican pack.

There is some evidence that 2,468 cases of Mexican pack were sold, of which 2,000 went to the Pando company. Under the circumstances of the Pando sales hereinbefore related we cannot see on what theory the 2,000 cases sold to it, which was at a special price and considerable loss, may be properly taken into consideration in determining the profit which is ordinarily added as provided for in the statute. Therefore there is nothing left for consideration except the profit which was realized on the 425 cases of solid tuna and 43 cases of flakes tuna.

In the decision of the trial judge the law is properly set out as follows:

From the record herein it appears that the exporter was the sole producer of canned tuna fish in Mexico. Under those circumstances it has been held that the profit ordinarily made by the manufacturer of the imported merchandise may be used in arriving at the statutory cost of production. *United States* v. *Henry Maier*, 21 C. C. P. A. 41, T. D. 46378; *United States* v. *F. B. Vandegrift & Co., et al.*, 26 C. C. P. A. 360, C. A. D. 42; *United States* v. *Draeger Shipping Co., Inc.*, 6 Cust. Ct. 783, Reap. Dec. 5118, affirmed 29 C. C. P. A. 258, C. A. D. 199.

Of course if the issue here were merely computing the average profit that was made by the cannery on all of the product sold by it, a loss on one part of its sales would offset profits made on another.

It seems that the dissenting judge below reasons on that basis. Of course, giving consideration to the goods sold at a loss really does discount the actual profit made by the cannery. That, however, is immaterial as far as this issue is concerned, which is, what is the ordinary profit made in the usual course of business, and as far as

this court is concerned, the only evidence of profit which it appears that the exporter ordinarily added is found in sales for domestic consumption in Mexico other than the sales to the Pando company.

It is our opinion that the appellate division did not err in its finding of the profit which is ordinarily added and such finding is supported by substantial evidence.

We have examined the cases cited by counsel for appellant, but in our opinion, under the facts of this case, they are not sufficient to sustain its contentions.

For the reasons hereinbefore stated, the judgment of the appellate division of the United States Customs Court is *affirmed*.