(Reap. Dec. 8181)

## HULSE IMPORT CO. *v.* UNITED STATES

Entry No. 1008.

(Decided December 4, 1952)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett, Daniel I. Auster*, and *Chauncey E. Wilowski*, special attorneys), for the defendant.

EKWALL, Judge: This is an appeal for reappraisement of four items of merchandise, consisting of perfumes and lotions called "Intermezzo," imported from Cuba on or about December 3, 1943. Item No. 523 was appraised on the basis of United States value, and items No. 500, No. 501, and No. 524 were appraised on the basis of cost of production. Plaintiff claims that the proper basis for appraisement of all the items is export value.

At the trial, plaintiff offered in evidence two affidavits of Mauricio Habif, general manager of the firm of Perfumeria Fibah, Mauricio y Alberto Habif y Cia., of Havana, Cuba, one sworn to August 25, 1950

(plaintiff's exhibit 1), and the other sworn to October 15, 1951 (plaintiff's exhibit 5). Defendant produced two reports of Treasury Representative Wilson C. Beers, one dated November 4, 1943 (defendant's collective exhibit 2), and the other dated January 11, 1944 (defendant's exhibit 3); a report of J. P. Sheehan, customs agent, dated July 10, 1944 (defendant's collective exhibit 4); and a report of Treasury Representative Joseph H. Dillon, dated November 29, 1950 (defendant's exhibit 6).

The first affidavit of Mauricio Habif contains the following statements: The firm of Perfumeria Fibah, Mauricio y Alberto Habif y Cia., manufactures and sells perfumes and lotions and is the only firm in Cuba that manufactures Perfumas Fibah, including products known as Perfuma Intermezzo No. 523 and No. 524, and Lotion Intermezzo No. 500 and No. 501. During the last three months of 1943, these perfumes and lotions were freely offered and sold in Havana, the principal market of Cuba, in wholesale quantities and in the ordinary course of trade, for exportation to the United States. Prices were quoted and four firms in continental United States were named as purchasers. The merchandise was also freely offered under the same conditions and prices to buyers in Puerto Rico. During that period, sales were made to Santiago Coll. Cameles,[1] Jose S. Luciano, and Antilles Department, Exchange System, U. S. Army, all of San Juan, Puerto Rico. The merchandise was offered for home consumption in Cuba, but purchasers were required to resell at certain retail prices.

The report of Treasury Representative Beers, dated November 4, 1943, states, however, that the manufacturer had granted exclusive sales rights in Puerto Rico to the firm of S. Coll-Camalez & Co. by a letter dated June 3, 1943. The following translation of a portion of the letter appears in the report:

From now on you will be our representative for the territory comprising Puerto Rico. Regarding the purchases which some merchants there may make from some of our wholesale customers here in Cuba, you are informed that, in the case of perfume, it will be very difficult for them to ship same, due to the fact that in order to ship perfume it is necessary to comply with certain requisites which are known only to the manufacturer, as you will be able to appreciate from the invoices which you receive from us.

The report added that all sales and deliveries for export to Puerto Rico since that date had been confined to the firm of S. Coll-Camalez & Co. and that the manufacturer would not sell or ship to any other firm in Puerto Rico.

The second affidavit of Mauricio Habif stated that the above-mentioned portion of the Treasury representative's report represented a misunderstanding of the facts. The affidavit continued:

---

[1] This name is given in the documents herein as Santiago Coll. Cameles, S. Coll-Camalez & Co., and as S. Coll-Camelez & Co.

\* \* \* The firm of S. Coll-Camelez & Co., of San Juan was a selling agent for my firm during the last three months of 1943. During that time Coll-Camelez & Co., solicited and accepted orders for perfume on behalf of my firm; also, Coll-Camelez maintained stocks of perfume which they sold for the account of my firm. Furthermore, Habif y Cia., accepted orders for perfume from other persons or firms in Puerto Rico and made shipments of the merchandise to those firms through Coll-Camelez & Co., as selling agents and paid them commission on all sales except Army Bases which were sold and shipped direct by us.

Three purchasers in Puerto Rico were listed: Santiago Coll-Camelez & Co., Jose S. Luciano, and U. S. Army Exchange System.

Treasury Representative Dillon visited the office and . factory of Mauricio y Alberto Habif y Cia. on November 27 and 28, 1950, interviewed Mauricio Habif, and examined the firm's records for the year 1943. According to these records, six sales of merchandise such as that in question were made to purchasers in continental United States, eight sales were made to various naval, air, and marine services at Guantanamo Bay,[2] and two sales were made to S. Coll-Camalez & Co. in Puerto Rico. In conclusion, Mr. Dillon's report states:

When an examination of the records produced for the calendar year 1943 failed to show sales to Jose S. Luciano and Antilles Department, Exchange System, U. S. Army, San Juan, Puerto Rico, as claimed in the affidavit of Mauricio Habif subscribed to before the United States Consul on August 25, 1950, this fact was invited to the attention of Mr. Mauricio Habif. He was at a loss to explain the lack of evidence to corroborate his affidavit and finally admitted that all sales to Puerto Rico had been through the intervention of S. Coll Camalez during the time he represented the firm of Mauricio y Alberto Habif y Cia. (Perfumeria Fibah).

From this evidence, it appears that the manufacturer did not freely offer and sell merchandise such as that involved herein to all purchasers in Puerto Rico, but that all offers and sales for exportation to Puerto Rico were made to or through S. Coll-Camalez & Co. of San Juan. As far as the record shows, the merchandise was freely offered to all purchasers for exportation to continental United States. The issue herein is whether under these circumstances an export value may be found for the merchandise.

Section 402 (d) of the Tariff Act of 1930 defines export value as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, \* \* \*.

---

[2] Guantanamo Bay is in Cuba, not in Puerto Rico. The United States Government maintains a naval station there, pursuant to agreement with Cuba. See Treaty between United States and Cuba, dated May 29, 1934, 48 Stat. 1682. Articles of foreign origin may enter the area free of duty, but are subject to duty upon entry into the United States. (Section 7.11, Customs Regulations of 1943.)

It has been held that the expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers, or those of a particular class, but all who care to buy. *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129. Where the merchandise is offered by the manufacturer to selected purchasers only or through exclusive agents, the market is restricted and such sales may not be considered in determining dutiable value. *United States* v. *H. W. Robinson & Co.*, 19 C. C. P. A. (Customs) 274, T. D. 45436; *United States* v. *Malhame & Co.*, 24 C. C. P. A. (Customs) 448, T. D. 48911. In *United States* v. *Heemsoth-Kerner Corp.*, 31 C. C. P. A. (Customs) 75, C. A. D. 252, a case involving United States value, the court said (p. 81):

So, while it appears that the merchandise is freely offered by appellee for sale in the principal market at list prices to all purchasers in some portions of the United States, it is not freely offered for sale by appellee at such list prices in such principal market to purchasers in territories allotted to distributors, which territories cover a major portion of the United States. Therefore, it may not be held that it is freely offered for sale in the principal market to all purchasers in the ordinary course of trade within the meaning of section 402 (e), *supra*. * * *

In the instant case, it appears that the merchandise is freely offered for sale to all purchasers for exportation to continental United States, but that offers and sales for exportation to Puerto Rico are restricted to one firm there. Puerto Rico is a part of the United States for tariff purposes. Section 401 (k) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. Therefore, the merchandise herein is not freely offered to all purchasers for exportation to all parts of the United States. Since the market is restricted, no export value can be found.

Plaintiff's proof herein is insufficient to establish that an export value existed for this merchandise on the date of exportation thereof. The values found by the appraiser, which are presumptively correct, must be affirmed.

Upon the record presented, I find as facts:

1. That the merchandise in question consists of four items of perfume and lotion called "Intermezzo" imported from Cuba on or about December 3, 1943.

2. That item No. 523 was appraised on the basis of United States value and that items No. 500, No. 501, and No. 524 were appraised on the basis of cost of production.

3. That the firm of Perfumeria Fibah, Mauricio y Alberto Habif y Cia., of Havana, Cuba, is the sole manufacturer thereof.

4. That the principal market in the country of exportation is Havana.

5. That at the time of exportation thereof, this merchandise was freely offered and sold to all purchasers in Havana in the usual wholesale quantities and in the ordinary course of trade for exportation to continental United States, but that offers and sales for exportation to Puerto Rico were restricted to one firm there.

I conclude as matters of law:

1. That Puerto Rico is a part of the United States for Tariff purposes. Section 401 (k), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

2. That the plaintiff has failed to overcome the statutory presumption of correctness attaching to the values found by the appraiser.

3. That no foreign or export value existed for said merchandise on the date of exportation thereof.

4. That United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis for determining the value of item No. 523 of the involved merchandise; that cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930, is the proper basis for determining the value of items No. 500, No. 501, and No. 524 of the involved merchandise; and that such values are the appraised values.

Judgment will be rendered accordingly.