(C.D. 2492)

G. G. JAMIESON *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 12, 1964)

Plaintiff not represented by counsel.

*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: This protest involves the dutiability of a horse named "Marco Polo II," which was imported from Australia and entered at the port of San Francisco on March 19, 1962. This horse, together with three other horses, was entered free of duty under paragraph 1606 of the Tariff Act of 1930. On March 22d, a declaration of free entry was filed by G. G. Jamieson, stating that he was a citizen of the United States and that the animals, including Marco Polo II, were imported for breeding purposes. On April 18th, the entry was liquidated free of duty. On May 24th, it was reliquidated, and duty was assessed on Marco Polo II at 8¾ per centum ad valorem under paragraph 714 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as a horse valued over $150. It is claimed in the protest that "The U.S. Department of Agriculture erred in not certifying to the pure breeding of MARCO POLO II."

The pertinent provisions of the tariff act are as follows:

[Par. 714, as modified by T.D. 52739.] Horses unless imported for immediate slaughter:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Valued over $150 per head_____ 8¾% ad val.

PAR. 1606. (a) [as amended] Any animal imported by a citizen of the United States specially for breeding purposes, shall be admitted free, whether intended to be used by the importer himself or for sale for such purposes, * * * *Provided*, That no such animal shall be admitted free unless pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed: *Provided further*, That the certificate of such record and pedigree of such animal shall be produced and submitted to the Department of Agriculture, duly authenticated by the proper custodian of such book of record, together with an affidavit of the owner, agent, or importer that the animal imported is the identical animal described in said certificate of record and pedigree. The Secretary of Agriculture may prescribe such regulations as may be required for determining the purity of breeding and the identity of such animal: *And provided further*, That the collectors of customs shall require a certificate from the Department of Agriculture stating that such animal is pure bred of a recognized breed and duly registered in a book of record recognized by the Secretary of Agriculture for that breed.

Among the official papers is an application for a certificate of pure breeding for the four horses imported. The inspector's report thereon states that he had identified the animals and that the pedigree transfer was incomplete. The Certificate of Pure Breeding was granted as to

only one of the horses, "Valerius," the names of the others being crossed out.

·   At the trial, the plaintiff appeared and testified on his own behalf. He produced the following documents:

1.   A Certificate of Exportation issued by the Société d'Encouragement pour l'amélioration des races de chevaux en France (hereinafter called Société d'Encouragement).   (Plaintiff's collective exhibit 1.)

2.   A Certificate of Foreign Registration issued by The Jockey Club.   (Plaintiff's exhibit 2.)

3.   A Certificate of Origin issued by the French Ministry of Agriculture, Stud-Book des Chevaux de Pur-Sang.   (Plaintiff's exhibit 3.)

4.   Regulations issued by the U.S. Department of Agriculture, Part 151.   (Plaintiff's exhibit 4.)

The Certificate of Exportation is in French and no translation has been produced.   It purports to certify to a textual reproduction of an inscription in the Stud Book français regarding Marco Polo II.   It also indicates that the horse was subsequently sent to New Zealand. Attached to it is a certificate of the New Zealand Racing Conference stating that the said horse was shipped to San Francisco to the sole registered owner, G. G. Jamieson, on February 19, 1962.

The Certificate issued by The Jockey Club states that it has received a certificate signed by the Société d'Encouragement of Paris, France, which states that Marco Polo II was foaled in 1946 by Le Pacha out of Perfume by Badruddin.

The Certificate of Origin is also in French and appears to contain the pedigree and birth certificate of Marco Polo together with a certificate of transfer and sale to the United States of America.

It appears from Mr. Jamieson's somewhat confusing testimony that he presented the Certificate of Exportation issued by the Société d'Encouragement (plaintiff's collective exhibit 1) to the customs officials here or to the Secretary of Agriculture in order to obtain a certificate of pure breeding.   He stated that in France two bodies are permitted to issue a certificate to the effect that a horse is registered in the stud book: The Société d'Encouragement and the Ministry of Agriculture itself.   According to Mr. Jamieson, the Ministry of Agriculture has delegated to the Société d'Encouragement the authority to issue such certificates.

Frank C. Simmons, called as a witness by the defendant, testified that he was supervising customs liquidator at the port of San Francisco and that he was familiar with the entry herein.   He stated that the entry was not liquidated free of duty under paragraph 1606 because there was no valid certificate of pure breeding from the Department of Agriculture as to this horse, because the name Marco Polo II had been stricken out by an officer of the Department of Agriculture.

In his brief, plaintiff states that there is one French Stud Book— Stud Book Français Registre des Chevaux de Pur-Sang and that this book is listed in 9 CFR 151.9. He also stated that under French procedures certificates of export and certificates of origin based on this Stud Book may be issued by either the Minister of Agriculture or the Société d'Encouragement. He claims that the only reason the certificate of pure breeding was not issued by the Secretary of Agriculture here was that the original paper submitted was certified by one of the two authorized agencies rather than the other and that he subsequently submitted a Certificat d'Origine certified by the French Minister of Agriculture. He, therefore, claims that the horse is entitled to free entry under paragraph 1606.

The Government contends that this court does not have the power to determine whether the Secretary of Agriculture erred in not certifying to the pure breeding of Marco Polo II and that Marco Polo II is not entitled to free entry because the importer has not complied with the statute and the regulations prescribed by the Secretary of the Treasury and the Secretary of Agriculture.

It has been held under predecessor statutes that the Board of General Appraisers (now the Customs Court) does not have the authority to pass upon or correct the action of the Secretary of Agriculture in failing or refusing to issue a certificate of pure breeding. *Hiram L. Todd* v. *United States*, 23 Treas. Dec. 488, Abstract 30669; *F. Ambrose Clark* v. *United States*, 36 Treas. Dec. 421, T.D. 38011. In the case last cited, six horses were imported from England and four were admitted free of duty as being pure bred and of a recognized breed. Two were assessed with duty because no certificate of the Department of Agriculture had been obtained or presented to the collector. Certificates of the Jockey Club of America had been presented but the Department of Agriculture refused to issue its certificate on the basis of a document other than a certificate of a recognized stud book of England. The importer claimed that this action was arbitrary, but the court held (p. 422):

* * * We think in this case we are confined to a review of the action of the collector, and certainly the collector was justified in declining free entry, not having had presented to him the required certificate from the Department of Agriculture. To hold now that he was at liberty to pass these horses free of duty under paragraph 397 would be to hold that the language of the statute is without force where it says that animals shall be "registered in a book of record recognized by the Secretary of Agriculture for that breed." The collector has no authority to pass upon the validity of the action of the Secretary of Agriculture in this regard; neither, in our view, has the Board of General Appraisers. We do not think it necessary to discuss the question of regulations which are authorized by the statute, as it appears to us that the requirements of the statutes have not been fulfilled. If the importer has any redress for the wrong which he assumes has been done him his remedy must be in another forum.

Said paragraph 397 of the Tariff Act of 1913 was reenacted by Congress in the Tariff Acts of 1922 and 1930 without any material changes. In the Summary of Tariff Information, 1929, page 2184, the *Clark* case is mentioned and it is stated:

* * * Neither the collector nor the Board of General Appraisers (now Customs Court) is vested with power to determine the sufficiency of the proof required by the Department of Agriculture upon which the above-named certificates should be furnished.

Since Congress twice reenacted the same language and had actual notice of the judicial decision, it must be held to have ratified the judicial construction in the absence of very compelling reasons to the contrary. *United States* v. *The Water Treatment Co. of America, etc.,* 33 CCPA 174, C.A.D. 332; *August Bentkamp* v. *United States,* 40 CCPA 70, C.A.D. 500.

Furthermore, nothing appears in the present record to indicate that the Secretary's refusal to issue a certificate of pure breeding was arbitrary or contrary to the statute. There have been statements, but no satisfactory proof, that both the Société d'Encouragement and the Ministry of Agriculture had authority under French law to issue certificates based on the Stud Book français. Foreign law must be proved by a properly authenticated copy thereof, or in the case of unwritten law, by the testimony of experts, such as lawyers, jurists, or others shown to have personal knowledge of the law in question. *Pierce* v. *Indseth,* 106 U.S. 546; *Nashua Savings Bank* v. *Anglo-American Land, Mortgage & Agency Company,* 189 U.S. 221; 20 Am. Jur., sections 413, 801. No such proof has been presented here.

Under paragraph 1606 (a), *supra*, the certificate of record and pedigree to be submitted to the Department of Agriculture must be "duly authenticated by the proper custodian of such book of record." In the instant case, the Department of Agriculture has recognized the Stud Book français as the proper book of record, and lists as the publisher "Commission du Studbook Français de Pur Sang, M. Maze-Sencier, Inspector General, Chief, Service des Haras, Ministry of Agriculture." 9 CFR 151.9. There is nothing before us to show that any other person or official was "the proper custodian of such book of record." Therefore, the Department of Agriculture was not required to accept a certificate issued by the Société d'Encouragement.

Assuming that the Certificat d'Origine issued by the French Ministry of Agriculture (plaintiff's exhibit 3) is the required certificate of record and pedigree, it is clear from the record that it was not submitted to the United States Secretary of Agriculture prior to liquidation, but was first produced at the trial and was subsequently submitted to the Department.

In *Beck* v. *United States*, 84 Fed. 150, a case arising under paragraph 482 of the Tariff Act of 1890, which required that proof of pure breeding be presented to customs officials, it was held that presentation of such proof in court was insufficient to establish that the assessment of duty on the animal was incorrect. The court held that it could decide only whether the proper proof had been produced before the customs officials, and since it had not, free entry was not allowed.

See also *W. J. Byrnes & Co.* v. *United States*, 60 Treas. Dec. 758, T.D. 45238, and cases cited. In the *Byrnes* case, a certificate was issued by the Department, but nearly a year after entry and several months after liquidation. The court held that the failure to comply with the regulations could not be cured by filing proof with the court at the time of trial.

For the reasons stated, the protest is overruled. Judgment will be entered accordingly.

### CONCURRING OPINION

. DONLON, Judge: I concur. I would add that, under the regulations of the Secretary of the Treasury, plaintiff could have posted bond and would thereby have had an extension of 6 months in which to work out with the Department of Agriculture the problem that arose from his failure to present at the time of entry proper evidence, as required by Congress, of the registration of this horse in a book of record recognized by the Secretary of Agriculture. There is nothing in the record before us to indicate that plaintiff availed himself of this very reasonable opportunity that is afforded to those who find themselves without the necessary proofs. He can not now be heard to complain of his own default.