(Reap. Dec. 10961)

HAP JONES DIST. CO. *v.* UNITED STATES

Entry No. 30262.

(Decided April 27, 1965)

*Glad & Tuttle* (*George R. Tuttle, Jr.,* and *Edward N. Glad* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Sheila N. Ziff* and *Morris Braverman,* trial attorneys), for the defendant.

WILSON, Judge: This is an appeal for reappraisement of the value of certain motorcycle tires and tubes in chief value of rubber, manufactured by The Avon India Rubber Co., Ltd., exported from England on January 15, 1960, for the account of the importer, Hap Jones Dist. Co.

Counsel for the respective parties stipulated that these tires and tubes are identified on the final list, published by the Secretary of the Treasury, T.D. 54521 (R. 4). The merchandise in question was appraised on the basis of United States value, as defined in section 402a (e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

The particular items in controversy were described on the invoice, covered by the appeal herein, at the appraised values, as follows:

|  |  |  | Appraised value |
|---|---|---|---|
| 36 | 3.50–8 | Spartan covers | $3.76 |
| 36 | 3.50–8 | Spartan covers | 3.76 |
| 48 | 3.50–8 | Spartan covers | 3.76 |
| 36 | 2.50–16 | Tubes | 1.66 |
| 108 | 4.00–18 | Tubes | 1.87 |
| 6 | 3.25–16 | Tubes | 1.86 |

Plaintiff, in the case at bar, contends that the motorcycle tires and tubes in question should be appraised on the basis of cost of production (section 402a(f) of the Tariff Act of 1930, as amended), because such or similar merchandise is not freely offered to all purchasers in the United States but is restricted to certain distributors who limit their sales to designated territories in the continental United States.

The provisions of the statutes under consideration are as follows:

Section 402a(e), as amended by the Customs Simplification Act of 1956:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the

principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Section 402a(f), as amended by the Customs Simplification Act of 1956:

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

There were received in evidence certain exhibits introduced by the plaintiff to show the basis of the claimed restriction on the sales of Hap Jones Dist. Co. (plaintiff's exhibits 1 and 2) and an affidavit by R. Corbett (exhibit 3), secretary of The Avon India Rubber Co., Ltd., introduced to further establish a restricted market in the United States and the claimed cost of production of the motorcycle tires and tubes in question. Such exhibits will be hereinafter referred to as is deemed pertinent in our determination of the issue herein.

Plaintiff also introduced the testimony of the importer of the involved merchandise, Mr. Loren A. Jones, and that of one of his distributors, Mr. Arthur Neal Andrews, manager of the wholesale department of Milne Bros. Accessories, Pasadena, Calif. Mr. Jones, who stated that he had handled the importation and sale of the involved merchandise in the United States, testified that in the sale of such items his firm operates on a national scale, "that's the United States," with some business being done in Alaska and Hawaii (R. 7).

He stated that he had made the contractual agreement to import these tires and tubes and that, in April 1950, an agreement was made with the supplier covering a 2-year period for the United States, Alaska, and Hawaii (plaintiff's exhibit 1) and that, subsequently, the agreement was extended by letter (plaintiff's exhibit 2). Mr. Jones then testified that, after the agreement was entered into with the manufacturer, he appointed distributors to assist him in the sale of the merchandise, granting them certain designated territories in the central and northeastern part of the United States, in Florida, California, and in the western territory around Texas (R. 13–14), advising them in this connection not to make sales in Puerto Rico (R. 16), because he understood that his contract was for the 48 states, and that he had asked also for the Alaska and Hawaii territory. He, himself, operated in the latter two areas as well as in the northwestern part of the United States. Mr. Jones further testified that he had never made sales in Puerto Rico and that he knew that none of his distributors had made sales in Puerto Rico.

Mr. Andrews, heretofore identified, testified that he sells in the United States tires and tubes manufactured by The Avon India Rubber Co., Ltd., purchased from Hap Jones Dist. Co., the plaintiff herein. He testified that, when he purchased tires and tubes from the latter, he was restricted to resell, as to territory, to southern California from Fresno to south of San Diego and then over to Arizona and Nevada. He stated that his policy was to limit his sales to authorized motorcycle dealers (R. 25–26).

The plaintiff, in this appeal for reappraisement, has the twofold burden of not only showing that the appraised values were erroneous but also of establishing some other values as correct for appraisement purposes. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. To do this, the appealing party must meet every material issue involved in the case, and, if it fails to do so, the values fixed by the appraiser remain in full force and effect. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. Accordingly, plaintiff must first establish that no United States value, within the statutory definition thereof, exists for the involved merchandise, and, assuming that it has established that fact, then it must establish the claimed cost of production of the merchandise in question. Based upon the appraiser's finding that United States value was the proper basis for the determination of the value of the merchandise, it may be presumed that it was found by the appraiser that no foreign or export value existed for the involved merchandise. See *Chicago Bird & Cage Co.* v. *United States*, 51 Cust. Ct. 456, Reap. Dec. 10625.

The agreement between the manufacturer of the involved merchandise, The Avon India Rubber Co., Ltd., and the plaintiff, therein

referred to as the "Concessionaire" (plaintiff's exhibit 1), upon which said plaintiff relies to establish that no United States value exists for the merchandise at bar, recites in part as follows:

1. That the Manufacturers grant to the Concessionaire the sole concession for the importation and sale in the United States of America, Alaska and Hawaii (hereinafter referred to as the Territory) of:

Avon Motor-Cycle Tyres

(hereinafter referred to as Avon Tyres)

\* \* \* \* \* \* \*

3. That the Concessionaire maintains stocks of Avon Tyres in appropriate centres in the Territory and promotes the sale of Avon Tyres to the fullest extent possible. The Concessionaire also undertakes not to wholesale or be party to the wholesaling of any competitive make of Tyres in the Territory and not to export Avon Tyres from the Territory to any other country. The manufacturers on their part undertake not to ship Avon Tyres intended for resale within the Territory unless with the agreement of the Concessionaire. \* \* \*

Plaintiff contends that the granting of the concession by the manufacturer, as above indicated, precluded both the plaintiff and its distributors from making sales in Puerto Rico under the terms of said agreement. Plaintiff directs attention to the case of *Hulse Import Co.* v. *United States*, 29 Cust. Ct. 504, Reap. Dec. 8181, wherein the court held that Puerto Rico is a part of the United States for tariff purposes. Plaintiff, accordingly, maintains that such restriction on sales by Hap Jones and its distributors, excluding Puerto Rico, constitutes a restriction on the freely offered price of the motorcycle tires and tubes in question and negatives a finding of United States value for the imported merchandise. While the testimony of Mr. Jones indicates that he restricted his distributors from making sales in Puerto Rico so as to conform, as alleged, with the terms of the agreement, nowhere does the agreement itself specifically prohibit the plaintiff from making sales in Puerto Rico.

The affidavit of the secretary of the manufacturer herein contains a statement that "It is customary and normal in the trade in Great Britain to think of the word 'United States of America' as meaning the 48 states and not as including Puerto Rico." This statement is unsupported by any evidentiary facts and is a mere conclusion as to such understanding in the trade and commerce in the country of exportation. Such unsupported declaration of the affiant does not establish the fact that it was not the intention of the parties to the agreement to include Puerto Rico as one of the areas in which the plaintiff could make sales. Further, while the terms of the agreement between the manufacturer and the plaintiff herein might preclude a finding of export value (section 402a (d) of the Tariff Act of 1930, as amended), for the involved merchandise, such terms do not constitute substantial evidence that the merchandise was not freely offered to all pur-

chasers in accordance with statutory United States value, nor do such terms establish that the plaintiff herein included restrictive provisions in its distributorship agreements. Assuming, which is not conceded, that the agreement between the manufacturer and the plaintiff did impose sales restrictions upon the latter, this in itself would not establish, without evidentiary proof, that the restrictions were to be carried on through, and imposed upon, the distributors as to establish a restricted or controlled market in sales by them in the United States. See *A. Newberg & Co., Inc.* v. *United States*, 41 Cust. Ct. 612, A.R.D. 92. As a matter of fact, the record indicates, in my opinion, that the confining of sales by the distributors to certain territories was mainly for economic reasons. In this connection, plaintiff's witness testified that it "was a practical thing," and that "it was too expensive to sell in someone else's territory" (R. 32–33). It further appears, as testified to by plaintiff's witness, that he and his distributors sold at the wholesale pricelist and that a person could go anywhere in the United States to any of these distributors and buy the tires at the same price (R. 33). On the basis of the facts presented in this record, I am of the opinion that there were no restrictions of "such" merchandise as to preclude a finding of United States value for the importations at bar.

In the case at bar, plaintiff has the burden not only of negativing United States value for "such" merchandise, but must also establish that there is no United States value for "similar" merchandise, before it can show that cost of production (section 402a(f) of the Tariff Act of 1930, as amended), is the proper basis for the determination of the value of the involved merchandise. *Marine Products Co.* v. *United States*, 19 Cust. Ct. 243, Reap. Dec. 7373; *United States* v. *A. N. Deringer, Inc.*, 42 Cust. Ct. 711, A.R.D. 102. There is some evidence in this case that "similar" merchandise exists. Plaintiff's exhibit 3 refers to certain efforts made by the affiant to obtain from other manufacturers the amount of profit added by them "in producing motor cycle tires and tubes of the same class or kind manufactured by our company."

For the aforesaid reasons, I deem it unnecessary to discuss the applicability of or the proof adduced as to the claimed cost of production of the merchandise.

On the basis of the record here presented, I find as facts:

1. That the merchandise here involved consists of motorcycle tires and tubes in chief value of rubber, manufactured by The Avon Rubber Co., Ltd., and exported from England on January 15, 1960.

2. That the merchandise was appraised on the basis of United States value, as that value is defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That, on or about the date of exportation, such or similar merchandise was not freely offered for sale for home consumption in England or for exportation to the United States.

4. That, during the period in question, such or similar merchandise was freely offered for sale for domestic consumption in the principal market of the United States to all purchasers, in the usual wholesale quantities and in the ordinary course of trade.

I conclude as matters of law:

1. That, at the time of exportation, there was no foreign or export value for the merchandise herein involved, as such values are defined in section 402a (c) and (d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956,

2. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome,

3. That the United States value, as that value is defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here involved, and

4. That such values for the merchandise in question are the appraised values.

Judgment will be entered accordingly.