(R.D. 11502)

PORT EVERGLADES STEEL CORP. *v.* UNITED STATES

Entry No. H–430.

(Decided March 19, 1968)

*Leonard Romanik* for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Samuel D. Spector, Glenn E. Harris,* and *Morris Braverman,* trial attorneys), for the defendant.

RAO, Chief Judge: Certain imported merchandise, invoiced as "Plain Round Open Hearth Mild New Billet Steel Bars" and "Deformed Reinforcing Bars, Open Heath [sic] New Billet Steel," was exported from Japan on November 8, 1955, and was appraised on the basis of export value, as defined in section 402(d) of the Tariff Act of 1930, at $117 per metric ton, net packed. It is plaintiff's claim that, at the time of exportation, there was no statutory export value for such or similar merchandise and that the proper basis of appraisement is foreign value, as defined in section 402(c) of said tariff act, as amended by the Customs Administrative Act of 1938, and that such value is $107 per metric ton.

The pertinent tariff provisions appear as follows:

Section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(d) of the Tariff Act of 1930:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In support of its claim, plaintiff introduced into evidence the testimony of one E. J. Kallaher, import traffic manager for over 12 years for the Port Everglades Steel Corp., and various affidavits and attached documents. According to his testimony, it is Mr. Kallaher's responsibility to handle all matters relating to the purchase and importation of the products bought by his company. The witness stated that, in connection with the merchandise at bar, he had issued the purchase order and that on October 17, 1955, which was subsequent to the placing of the order, but prior to the date of shipment, the Japanese government declared an embargo against the exportation of the type of steel covered by the order. The embargo was in effect

until December 31, 1955. He testified that he was aware of the embargo through "normal trade sources."

The witness further testified that upon learning of the embargo, he inquired by cablegram, through his company's supplier, Mitsubishi, and "any other source we could find" as to the availability of this type of steel from other Japanese sources and learned that, except for export licenses already issued, the same merchandise was being sold in Japan in the normal course of business for Japanese consumption at a price which he calculated to be $107 per metric ton.

Plaintiff's exhibit 1 is an affidavit of one Kiichi Miyagawa, who during the period in question was employed by Mitsubishi Shoji Kaisha, Ltd., Port Everglades' supplier, as assistant manager of the Ferrous Metal Overseas Department. The affiant stated that, by virtue of his employment, he knew of his own knowledge that, on October 17, 1955, the Japanese government imposed an embargo "against the further shipment for export of all steel bars," including the type under consideration herein; that according to his best recollection the embargo was in effect until December 31, 1955; and that the export license for the merchandise in question was issued prior to the effective date of the embargo. Mr Miyagawa further stated that, according to his best recollection and knowledge, the price at which steel of the type at bar was offered for sale on the open market in Japan during the pertinent period was $107 per metric ton, which was the free offering price by Mitsubishi on or about October 29, 1955.

Plaintiff's exhibit 2 is an affidavit by Mr. Katsuzo Ishibashi, who stated that he was employed on or about October 29, 1955, by Asahi Bussan Co., Ltd., sellers of steel and steel products, as the assistant manager of the Foreign Trade Department. He also attested to the existence of a steel embargo between October 17, 1955, and December 31, 1955, further stating that the only exportation of deformed reinforcing bars during this period was with respect to export licenses issued before the effective date of the embargo. The affiant further stated that, during the embargo period, "deformed reinforcing bars were offered for sale (and sold) on the open market for local consumption" in the price range, according to his best recollection, of $103 to $107 per metric ton. The affidavit concludes with a statement to the effect that the information set forth therein is based on the affiant's personal knowledge as gathered from an inspection of the books and records of his company.

Plaintiff's exhibit 3 in an affidavit of one M. Shiota, who described himself as the managing director of Japan Iron & Steel Exporters' Association in Tokyo, Japan, in which he averred that an embargo against the exportation of steel bars and shapes was in effect from October 17, 1955, to December 31, 1955. Attached to his affidavit, as

exhibit A, was a document, not translated from its apparent Japanese text, which he described as "a copy of the International Trade Public Bulletin published on or about October 17, 1955, whereby the Ministry of International Trade and Industry, Japan, suspended the granting of export licenses for steel bars and shapes effective October 17, 1955." Also attached as exhibit B is a document in English stated to be a certificate from the Ministry of International Trade and Industry, Japan, advising of the suspension of export licenses for certain steel products during the period October 17, 1955, to December 31, 1955.

Plaintiff's exhibit 4 is an affidavit of one Masaya Miyoshi, an Economic Research Consultant for the United States-Japan Trade Council, which was executed in Washington, D.C. It provides a translation of exhibit A of plaintiff's exhibit 3, which the affiant identified as page 2242 of "The International Trade Bulletin published by the Ministry of International Trade and Industry" showing the suspension of export permits on certain steel products.

Both at the trial, and in its brief, the defendant has made objection to the receipt of this exhibit into evidence. Counsel contends that said exhibit is not a document contemplated under the statutory exception to the hearsay rule in reappraisement cases found in 28 U.S.C., section 2633, citing *Paul Morris* v. *United States*, 57 Cust. Ct. 585, R.D. 11207, application for review dismissed, 58 Cust. Ct. 821, A.R.D. 221, and, moreover, that it has not been established that the matter translated is an official pronouncement of the Japanese government.

The cited case offers no support to the position of the defendant with reference to the admissibility of plaintiff's exhibit 4, since it was concerned with certain unverified statements which could not be classified as affidavits, and did not rise to that estate merely because they were accompanied by an affidavit of the translator. Here, the questioned exhibit is itself an affidavit duly verified, admissible by reason of the statute unless objected to on the ground that the attendance of the witness could reasonably be had. Neither is its admissibility affected by the fact, claimed by the defendant, that "[t]he affiant *does not even purport* to have personal knowledge of the truth of the contents of the document he translated." [Italics quoted.]

The value of the exhibit as evidence presents an entirely different question, however. Its probative effect would depend either upon the affiant's personal knowledge of the truth of its contents or the authenticity of the material translated. The former, quite obviously is lacking; the latter not presented within established guidelines for proving a foreign decree. Foreign law, in this case the alleged embargo, cannot be judicially noticed. It must be proved either through a properly authenticated copy of the law or, in the case of unwritten law, by the testimony of experts having personal knowledge thereof. *Liverpool*

*Steam Co.* v. *Phoenix Ins. Co.,* 129 U.S. 397; *Pierce* v. *Indseth,* 106 U.S. 546; *Ennis et al.* v. *Smith et al.,* 55 U.S. 400; *G. G. Jamieson* v. *United States,* 53 Cust. Ct. 179, C.D. 2492. It has not been shown that the International Trade Public Bulletin is an official publication of the Japanese government, nor have the purported provisions of the alleged law been otherwise properly identified. Consequently, while plaintiff's exhibit 4 is admissible, it possesses no evidentiary value.

Underlying every reappraisement action is the statutory presumption of correctness of the appraised value, and the statutory obligation imposed upon the party challenging it of proving the contrary. 28 U.S.C., section 2633. The burden is not discharged unless the appraised value is shown to be erroneous, and some other value is established to be correct. *United States* v. *Baar & Beards, Inc.,* 46 CCPA 92, C.A.D. 705; *Kobe Import Co.* v. *United States,* 42 CCPA 194, C.A.D. 593; *Brooks Paper Company* v. *United States,* 40 CCPA 38, C.A.D. 495.

It is the theory of plaintiff in this case that the basis of value adopted by the appraiser was erroneous for the reason that the Japanese embargo upon the exportation of steel bars precluded a finding that such or similar merchandise was freely offered for sale for exportation to the United States, within the contemplation of the export value provision.

It is, of course, a well-established principle that where a restriction operates to prevent a free offer to all purchasers for exportation to the United States, statutory export value is eliminated. *R. J. Saunders & Co., Inc.* v. *United States,* 42 CCPA 55, C.A.D. 570; *United States* v. *Malhame & Co.,* 24 CCPA 448, T.D. 48911; *A. Newberg & Co., Inc.* v. *United States,* 41 Cust. Ct. 612, A.R.D. 92; and *Hulse Import Co.* v. *United States,* 29 Cust. Ct. 504, Reap. Dec. 8181. *A fortiori,* where exportation to the United States is enjoined by governmental embargo, there can be no statutory export value.

Here, while documentary proof of the existence and terms of the embargo is wanting, there is ample evidence that, during the period of exportation of the merchandise at bar, no export licenses were issued. The cumulative effect of the sworn statements of those engaged in the business of selling steel bars tends to support the conclusion that, at the time in question, an embargo existed which prevented the exportation of steel bars, unless a previously issued export license, as in the instant case, had been obtained. Testimony of informed businessmen is competent proof of governmental restrictions upon the conduct of their business. *United States* v. *F. S. Allenby & Co. et al.,* 20 CCPA 80, T.D. 45703; *Haddad & Sons, Inc.* v. *United States,* 54 Cust. Ct. 600, Reap. Dec. 10942, affirmed 56 Cust. Ct. 792, A.R.D. 205.

It having been established that export value does not exist under the facts and circumstances presented in this case, it remains to be determined whether or not plaintiff has satisfactorily established the alternative statutory basis upon which it relies. The claim is made that there is a foreign value for such merchandise and that such value was $107 per metric ton. To sustain it, it was essential for plaintiff to prove every material element included in the statutory definition of foreign value. It could not succeed in that endeavor unless it had submitted evidentiary facts from which it may be concluded that such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country of exportation in the usual wholesale quantities and in the ordinary course of trade. *Kobe Import Co.* v. *United States, supra, Brooks Paper Co.* v. *United States, supra.*

The instant record is utterly insufficient to meet these requirements. There is not a scintilla of evidence to show the usual wholesale quantities, or the ordinary course of trade, or the principal markets in the country of exportation. All that appears are unsupported statements that the merchandise was offered for sale on the open market at prices ranging from $103 to $107 per metric ton. At best, these are ultimate conclusions not predicated upon competent evidentiary facts and, hence, not satisfactory evidence of the facts in issue. *Kobe Import Co.* v. *United States, supra.*

By reason of the foregoing, the court makes the following findings of fact:

1. That the merchandise in this appeal to reappraisement consists of steel bars exported from Japan on November 8, 1955.

2. That the said merchandise was appraised on the basis of export value, as defined in section 402(d) of the Tariff Act of 1930, at a value of $117 per metric ton, net packed.

3. That it is claimed that, at the time of exportation, there was no export value for such or similar merchandise and that the proper basis of appraisement is foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

4. That, at the time of exportation, an embargo was in existence prohibiting the exportation from Japan of merchandise such as that in question, save for export licenses previously issued.

5. That due to the embargo, at the time of exportation, such or similar merchandise was not freely offered for sale for exportation to the United States to all purchasers in the principal markets of the country from which exported.

6. That there is no evidence to establish any value other than that found by the appraiser.

The court, accordingly, concludes:

1. That, at the time of exportation of this merchandise from Japan, there was no export value, as defined in section 402(d) of the Tariff Act of 1930.

2. That the plaintiff, however, has failed to establish any other basis of value than that returned by the appraiser.

3. That the presumptively correct appraised value of the merchandise herein has not been overcome.

Judgment will be entered accordingly.